FIRST WISCONSIN NATIONAL BANK OF MILWAUKEE, Respondent, v. MIDLAND NATIONAL BANK, Appellant.

*No. 75–401. Argued February 28, 1977.—Decided March 29, 1977.*
(Also reported in 251 N. W. 2d 829.)

For the appellant there were briefs by *Charne, Glassner, Tehan, Clancy & Taitelman, S.C.,* and oral argument by *Irvin Charne,* all of Milwaukee.

For the respondent there was a brief by *Foley & Lardner* and oral argument by *James O. Huber* and *Rodney H. Dow,* all of Milwaukee.

ROBERT W. HANSEN, J. This appeal raises two queries at the outset: (1) Did First Wisconsin have a security interest in the obligation of Midland to Kassuba evidenced by the certificates of deposit and, if so, (2) did the existence of that security interest preclude Midland from setting off its obligation to Kassuba against Kassuba's obligation to Midland. If these two questions are answered affirmatively, the trial court's grant of summary judgment to First Wisconsin must be affirmed.

If either of these two questions are answered in the negative, we must then proceed to other issues presented on this appeal concerning the respective rights of the parties in the certificates of deposit.

The trial court found that affirmative answers to the two questions asked were required by the rationale and result reached by this court in the recent case of *Commercial Discount Corp. v. Milw. Western Bank.*[1] We agree with the trial court that the holding in *Commercial Discount* requires a finding that First Wisconsin had a valid security interest in funds (of Kassuba) on deposit at Midland and, therefore, priority over Midland.

In *Commercial Discount*, plaintiff corporation sued defendant bank alleging among other things that defendant bank did not have the right to set off funds in a depositor's account (Simplex Shoe Company). The offset was against an outstanding indebtedness to the bank, where the funds offset were subject to the plaintiff's prior perfected security interest.

In that case Simplex Shoe Company had two checking accounts with defendant bank. Simplex borrowed $240,-000 from the bank as evidenced by a promissory note. Subsequently Simplex defaulted on the note and the bank charged the Simplex checking accounts against the note balance. The amount offset was $7,057.66, the total amount in both Simplex checking accounts.

Prior to this transaction, plaintiff corporation had made a large loan to Simplex and perfected a security interest in accounts of Simplex and all proceeds of named collateral. The plaintiff claimed ". . . that the funds set off by the bank were subject to the prior perfected security interest of the plaintiff and properly belonged to the plaintiff and that the appropriation of the remaining funds of Simplex was wrongful and in violation of the plaintiff's right thereto."[2] The plaintiff also

[1] 61 Wis.2d 671, 214 N.W.2d 33 (1974).

[2] *Id.* at 679.

alleged that the defendant bank knew or should have known of the plaintiff's interest in the funds on deposit. The defendant bank claimed to the contrary—that it had a statutory right to setoff[3] and that the only prerequisite to the exercise of the right (to setoff) is a mature obligation.

In *Commercial Discount,* as to the right of a bank to apply the funds of a third person deposited in the debtor's name on the debtor's obligation to the bank, this court found the well-settled rule to be that ". . . if a bank actually knows that sums deposited in the account of one of its debtors belong to a third person, it cannot apply such funds against the debtor's obligation to it," adding that a bank is also denied the right of setoff ". . . where it has knowledge of circumstances sufficient to necessitate inquiry concerning the sums."[4]

The *Commercial Discount* court then went beyond the well-settled rule and elected to follow ". . . the 'equitable' rule that knowledge or lack of it does not determine the rights of a bank to setoff against the account of a depositor which contains funds to which a third party has a valid prior claim."[5] We then held, as to the right to setoff against funds of a third person deposited in the debtor's bank account, that ". . . if the third person can prove his claim he is entitled to recover the money seized from the depositor's account which belongs to him."[6]

---

[3] *Id.* at 679, defendant bank citing and relying on sec. 895.07, Stats., entitled *Set-offs.*

[4] *Id.* at 680. *See generally,* Annot., *Bank's Right to Apply Third Person's Funds Deposited in Debtor's Name, on Debtor's Obligation,* 8 A.L.R.3d 235 (1966) and cases cited therein.

[5] *Id.* at 682, 683.

[6] *Id.* at 683. *See also: Lincoln Crest Realty v. Standard Apt. Devel.,* 61 Wis.2d 4, 15, 211 N.W.2d 501 (1973); *Smith v. American Nat. Bank,* 215 Wis. 288, 254 N.W. 548 (1934); *Boyle v. Northwestern Nat. Bank of Superior,* 125 Wis. 498, 103 N.W. 1123, 104 N.W. 917 (1905).

It is this rule, established in the *Commercial Discount Case,* and the rationale and reasoning behind it, which is to be applied to the facts of the case before us.

The instant action arose out of the issuance by Midland of two certificates of deposit to one Walter J. Kassuba, prior to August 31, 1973. The certificates were for $225,000 and $250,000.[7] Kassuba then pledged the certificates to First Wisconsin as security for payment of a $990,000 loan. Simultaneously, Kassuba executed two savings assignment forms to First Wisconsin.

By virtue of these forms Kassuba transferred to First Wisconsin the certificates of deposit "and any subsequent replacement, renewal, extension or reissue" of the certificates of deposit ". . . as collateral security for payment of all present and future liabilities of whatsoever kind or description owing to the Bank, directly or indirectly from [Kassuba]." Upon execution of the savings assignment forms First Wisconsin took possession of the certificates.

Prior to execution of these forms Kassuba had executed a Collateral Pledge Agreement giving First Wisconsin a security interest "in all property of Kassuba of any kind then or thereafter in the possession or control of First Wisconsin" for collateral purposes. This pledge agreement provided in part that:

"Pledgor shall . . . , upon request, take any action reasonably deemed advisable by Bank to preserve the Collateral or to establish, determine priority of . . . or enforce Bank's interest therein or rights under this Agreement.

---

[7] Certificate No. 11653 in the amount of $225,000 was a renewal of two certificates of deposit originally issued by Midland in May and October of 1972. Certificate No. 9812 in the amount of $250,000 was a renewal of a certificate of deposit originally issued by Midland in December, 1971.

"If Pledgor fails to act as required by this Agreement . . . , Bank is authorized . . . to take any such action including without limitation signing Pledgor's name. . . ."

The certificates of deposit in question matured on December 13, 1973, and Midland issued two new 90-day renewal certificates to Kassuba in the amounts of $233,-747.26 and $265,000. Whereupon First Wisconsin took immediate possession of the renewal certificates.

On December 21, 1973, Kassuba filed a voluntary petition for bankruptcy under ch. XI of the Bankruptcy Act. This petition was still pending at the time of the lower court proceedings. Also on December 21, 1973, the Bankruptcy Court in the Northern District of Illinois, Eastern Division, issued an order staying proceedings by creditors.

On December 31, 1973, First Wisconsin advised Midland of its security interest in the renewal certificates of deposit. First Wisconsin also directed Midland to regard it as having sole right and control of the certificates until receipt of written notice to the contrary.

Prior to March 12, 1974, Kassuba was substantially indebted to Midland. On March 12, Midland set off the amount it owed to Kassuba on the renewal certificates of deposit against the greater indebtedness of Kassuba then due and owing to Midland. This setoff forms the basis of the present action.

The certificates of deposit matured on March 13, 1974. On that date one H. James Sceales, a vice-president and cashier of First Wisconsin, endorsed the certificates of deposit as attorney-in-fact for Kassuba. He then presented them to Midland for payment. This endorsement was pursuant to authority allegedly derived from a clause in the Collateral Pledge Agreement. The Sceales' endorsement followed a refusal by Kassuba to endorse the certificates. Midland refused to honor the certificates

when presented for payment by First Wisconsin alleging as grounds therefor the setoff against Kassuba's indebtedness.

Analogies between the fact situation in *Commercial Discount* and the facts in the case before us are evident. As in *Commercial Discount,* the plaintiff here, First Wisconsin, held a security interest—here in the two certificates of deposit. As in *Commercial Discount,* the defendant here, Midland, is asserting its right to a setoff—here the amount it owed to Kassuba against outstanding indebtedness owed by Kassuba to Midland. Here it is not disputed, as it was in *Commercial Discount,* that the plaintiff gave defendant notice of its security interest prior to the attempted setoff.[8] Here, as in *Commercial Discount,* the issue is whether the holder of a security interest has priority over the depositary bank seeking to set off against an outstanding indebtedness. *Commercial Discount* held, as did the trial judge here, that the secured party has priority over the bank seeking to set off.

Midland sees an escape hatch from the apparent applicability of the *Commercial Discount* rule to the analogous fact situation here in its claim that the First Wisconsin security interest ought extend only to the certificates of deposit themselves, and not to the money paid for the certificates which Midland used for the setoff. The claim is that First Wisconsin's security interest in the certificates of deposit is not analogous to a security interest in proceeds in a checking account.

This contention requires looking at the nature of a certificate of deposit and of a security interest therein.

---

[8] Following *Commercial Discount,* this notice is now irrelevant to the disposition of this case pursuant to adoption of the "equitable rule" which no longer requires proof of knowledge on the part of the bank. This was there held to be the better rule because it eliminates the problems of proving knowledge on the part of an institution.

If it is an acknowledgment by a bank of receipt of money with an engagement to repay it, a writing is then a certificate of deposit in this state only if it complies with the requirements of sec. 403.104(1), Stats.[9] Statutory requirements met, as we hold they are here, a certificate of deposit becomes a negotiable instrument carrying with it an obligation on the part of the depositary bank to repay the receipt of money given to such bank by the maker, here Kassuba. It is somewhat similar in nature to a certified check in that it is a negotiable instrument drawn on a bank.[10] It is likewise somewhat similar to a note in that it is a promise to pay when due.[11]

The security interest of First Wisconsin in the certificates of deposit includes and extends to unidentified funds on deposit by Kassuba at Midland which will pay the certificates when due. A contrary holding would mean a security interest in a certificate of deposit itself would be worthless unless such interest extended to funds in the bank used to pay the certificate upon maturation.

[9] Sec. 403.104(2)(c), Stats., defines a certificate of deposit as follows:

"(2) A writing which complies with the requirements of this section is:

". . .

"(c) A 'certificate of deposit' if it is an acknowledgment by a bank of receipt of money with an engagement to repay it."

Such "requirements of this section" are spelled out in sec. 403.104 (1), Stats.:

"(1) Any writing to be a negotiable instrument within this chapter must:

"(a) Be signed by the maker or drawer; and

"(b) Contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this chapter; and

"(c) Be payable on demand or at a definite time; and

"(d) Be payable to order or to bearer."

[10] *See:* Sec. 403.104(2)(b), Stats.

[11] *See:* Sec. 403.104(2)(d), Stats.

While the money on deposit in Midland was not likely the same currency bills originally deposited by Kassuba, it is as evident that the money used for deposit by Simplex in *Commercial Discount* was likely not the exact bills originally deposited in its checking account by Simplex.

What is relevant and controlling, in both *Commercial Discount* and the case before us, is not whether the security interest is as to funds "on their way in." Rather, once the security interest attaches—here to the certificates of deposit—that secured interest is as to unidentified funds, not specified by serial numbers, on deposit at the depositary bank. Here, as in *Commercial Discount*, what determines the priority of the security interest is that it had attached at the time of offset, here by Midland.

The policy expressed or rationale followed in *Commercial Discount* is not affected by whether the security interest exists at the time funds for the certificate are originally deposited, or whether the security interest attaches subsequent thereto. As long as the security interest is perfected and attached prior to an attempted setoff, priority is to be given to the perfected security interest over a subsequently attempted setoff by the depositary bank.

Thus, applying the rule and reasoning of the *Commercial Discount Case,* we affirm the trial court's holding in this case that First Wisconsin held a security interest in the obligation of Midland to Kassuba—evidenced by the two certificates of deposit—that precluded Midland from setting off its obligation to Kassuba against Kassuba's obligation to Midland.

So holding, we do no more than note Midland's contention that an order of a bankruptcy court in Illinois precluded First Wisconsin from endorsing the certificates of deposit or instituting this proceeding.[12] Such order

---

[12] That endorsement is irrelevant to the validity of the security interest.

was merely a *stay* of lien or security interest enforcement.[13] It was not a determination of the respective rights of First Wisconsin and Midland. Since the order of the bankruptcy court was lifted on November 21, 1974, and this action commenced on December 23, 1974, that order was no bar to the commencement of this action, and, once lifted, it did not affect or resolve the issue of priority as between First Wisconsin and Midland.

Likewise, we find it unnecessary to review that backstop or alternative ground stated by the trial court for granting summary judgment, to wit, that First Wisconsin qualified here as a holder in due course so as to entitle it to defeat Midland's claim of right to setoff. As was said in the *Commercial Discount Case*, ". . . in view of our . . . discussion on the liability of the bank, it is unnecessary to base nonliability on the concepts of holder in due course."[14] One reason for affirmance is here sufficient, and that reason has been above set forth.

*By the Court.*—Judgment affirmed.

---

[13] The bankruptcy court order, issued December 21, 1973, provided in pertinent part:

". . . all persons claiming to own . . . [a] security interest or other lien against any of the property of the debtors herein . . . [are] until further order of the Court, restrained, enjoined and stayed from

"(a) instituting or continuing with any act or proceeding, judicial or otherwise, to enforce a lien on any property of the debtors, wherever located, or from seizing, attaching, garnisheeing, foreclosing or levying upon said properties, or causing any judicial process to be issued against the debtors or any of their properties, wherever located."

[14] *Commercial Disc. Corp. v. Milw. Western Bank, supra*, n. 1, at 685.