JOHNSON, Circuit Judge:
 

 Citibank filed suit against Interfirst seeking to recover the amount due and payable on a non-negotiable certificate of deposit. The district court granted summary judgment in Citibank’s favor awarding Citibank $115,750 in addition to $15,000 in attorney’s fees and costs. This Court affirms the district court’s judgment in favor of Citibank but reduces the district court’s award of attorney’s fees to $6,259.53.
 

 I. BACKGROUND
 

 Both parties in the instant case, Inter-first and Citibank, are creditors of the now bankrupt corporation Country Junction, Inc. Prior to filing for bankruptcy, Country Junction had established a line of credit with Interfirst and had also “purchased” a non-negotiable certificate of deposit from Interfirst “payable to Country Junction” in the principle amount of $100,000. Country Junction later pledged that same certificate as security with Citibank to secure, a line of credit advanced by Citibank. Citibank took possession of the certificate as part of its security agreement with Country Junction.
 

 Several months after Citibank had taken the ■ security interest in the certificate, Country Junction filed a Chapter 11 petition for relief under the Bankruptcy Code. Both Citibank and Interfirst petitioned the bankruptcy court for relief from the automatic stay, and obtained the consent of the debtor in possession and the creditors’ committee, so as to allow each bank to enforce whatever claim it had on the proceeds of the certificate.
 

 After the bankruptcy court entered agreed upon orders lifting the stay against each bank, Interfirst paid the sum of $9,967.81 to Country Junction as debtor in possession. This payment represented the interest earned on the certificate after the date Country Junction had filed for bankruptcy. Interfirst then applied the balance of the proceeds of the certificate ($105,-739.04) to the debt Country Junction owed Interfirst.
 

 Several weeks later, Citibank presented the certificate to Interfirst and demanded payment. After Interfirst refused Citibank’s demand, Citibank filed the instant diversity suit against Interfirst to recover the amount of the certificate, interest, attorney’s fees and costs. Citibank then filed a motion for summary judgment which the district court granted. The district court judgment awarded Citibank $115,750 in addition to $15,000 in attorney’s fees and costs. Interfirst appeals. On appeal, In-terfirst contends that the existence of a material issue of fact regarding Interfirst’s knowledge of Citibank’s interest in the certificate should have precluded the district court from granting summary judgment.
 

 II. DISCUSSION
 

 Citibank had a perfected security interest in the certificate under Article 9 of the Texas Business and Commerce Code. Under Article 9's priority provisions, Citibank’s perfected security interest would be entitled to priority over Interfirst’s right of
 
 *621
 
 setoff. Tex.Bus. & Com.Code Ann. § 9.312(e) (Vernon 1968 and 1986 Supp.). Relying on section 9-104(9) of the Code, however, the Texas Supreme Court has concluded that the Article 9 priority rules do not govern conflicts between a secured creditor and a bank exercising setoff.
 
 See First National Bank in Grand Prairie v. Lone Star Life Insurance Co.,
 
 529 S.W.2d 67 (Tex.1975) (per curiam). Therefore, we look to Texas common law for the applicable rules.
 

 Under Texas law, a bank cannot validly setoff funds which it knows or should know are held for the benefit of a third party or which belong to a third party.
 
 National Indemnity Co. v. Spring Branch State Bank,
 
 348 S.W.2d 528, 529 (Tex.1961). Moreover, even when a bank has no notice or knowledge of a third party’s interest in funds on deposit, the bank may not setoff and retain those funds unless it has detrimentally changed its position in reliance on the depositor’s ownership of the funds.
 
 Id.
 
 at 529-31. This second rule, limiting a bank’s right to set-off even without notice, is known as the “equitable rule.”
 

 Whether Interfirst knew of Citibank’s interest in the certificate of deposit is irrelevant under the equitable rule. Thus, to the extent that the equitable rule applies, the district court properly granted summary judgment in favor of Citibank.
 

 Interfirst asserts, however, that the equitable rule does not apply in the instant case. According to Interfirst, the equitable rule only applies when the third party’s interest in the funds on deposit existed at the time the deposit was made.
 
 [1]
 
 Interfirst concludes that the equitable rule does not apply here since Citibank did not acquire an interest in the funds on deposit, as represented by the certificate of deposit, until several weeks after Country Junction deposited the funds.
 

 Interfirst’s argument is unpersuasive. No authority cited by Interfirst suggests a distinction between cases where the third party’s interest existed at the time of deposit and cases where that interest arises subsequent to deposit.
 
 [2]
 
 What is relevant and controlling in the instant case is not whether the security interest attached to funds “on their way in.” To the contrary, what determines the priority of the security interest under the equitable rule is that the security interest had already attached at the time of offset.
 
 See National Bank v. Midland National Bank,
 
 76 Wis.2d 662, 251 N.W.2d 829 (Wis.1977) (refusing to limit equitable rule in Wisconsin to interests existing at the time funds deposited). The equitable rule rests on the notion that when only one of two innocent parties can collect, absent some special equity the party with title to the funds should collect.
 
 See Cassidy Commission Company v. Security State Bank,
 
 333 S.W.2d 454, 459 (Tex.Civ.App.—Houston 1960, no writ) (“The rule is based on the superior equity in the real owner of the funds.”). This superior equity arising in the real owner of funds exists regardless of when the owner’s interest attaches so long as the interest attaches prior to actual setoff.
 

 Interfirst’s assertion that the equitable rule is inapplicable to priority disputes between secured creditors and banks exercising their right to setoff is similarly unpersuasive. No Texas case suggests that the equitable rule is inapplicable to priority disputes involving secured creditors. Interfirst mistakenly relies on
 
 First National Bank in Grand Prairie v. Lone Star Life Insurance Co.,
 
 524 S.W.2d 525 (Tex.Civ.App.—Dallas 1975, writ ref’d n.r. e.). In
 
 Grand Prairie,
 
 the Texas Court of Civil Appeals’ conclusion that Article 9 of the Texas Business & Commerce Code rather than the equitable rule governed
 
 *622
 
 priority contests involving secured creditors and banks’ right of setoff was expressly rejected by the Texas Supreme Court.
 
 See First National Bank in Grand Prairie v. Lone Star Life Insurance Co.,
 
 529 S.W.2d 67, 68 (Tex.1975) (per curiam).
 

 Moreover, the only jurisdiction found to have specifically considered the issue has concluded that the equitable rule does govern priority disputes between secured creditors and banks exercising their right to setoff.
 
 See First Wisconsin National Bank v. Midland National Bank,
 
 76 Wis.2d 662, 251 N.W.2d 829 (Wis.1977) (held under the equitable rule that plaintiff’s security interest in funds represented by certificates of deposit precluded bank from exercising setoff against those funds).
 
 See also
 
 Clark,
 
 Bank Exercise of Setoff: Avoiding the Pitfalls,
 
 98
 
 Banking L.J.
 
 196, 222 (1981) (recognizing the propriety of applying the equitable rule in a contest between a bank’s right of setoff and a security interest acquired in funds represented by a certificate of deposit). Thus, Interfirst’s assertion that the equitable rule does not apply to the instant dispute is without merit.
 

 Even where the equitable rule applies, however, the rule permits a bank to setoff funds to the extent the bank has “changed its position to its detriment” in reasonable reliance on the depositor’s ownership of the certificate.
 
 National Indemnity,
 
 348 S.W.2d at 529-31. Exactly what constitutes sufficient detrimental reliance under the equitable rule is unclear. Extinguishing an antecedent debt of the depositor is clearly not a detrimental change in position since returning the funds to the true owner leaves the bank in the same position in relation to the depositor’s indebtedness as when the funds were deposited.
 
 See National Indemnity,
 
 348 S.W.2d at 521. On the other hand, releasing collateral or extending credit in reasonable reliance on a deposit should usually constitute a sufficient change in position.
 

 Interfirst asserts a detrimental change of position of a different sort in the instant case. Prior to Citibank’s demand for payment, Interfirst paid the sum of $9,967.81 to Country Junction as debtor in possession. This sum represented interest earned on the certificate after the date Country Junction had filed for bankruptcy. The payment was made pursuant to an agreed upon order lifting the bankruptcy stay. In-terfirst contends that this payment constitutes a detrimental change of position entitling Interfirst to prevail over Citibank to the extent of the payment.
 

 We disagree. The undisputed summary judgment evidence establishes that Inter-first's reliance was unreasonable under the circumstances. Thus, no special equities exist entitling Interfirst to prevail over Citibank. Interfirst had reason to know that the certificate was subject to a perfected security interest.
 
 [3]
 
 Interfirst knew of Country Junction’s bankruptcy and of the existence of bankruptcy schedules. These schedules revealed Citibank’s interest in the certificate of deposit. A reasonable general creditor with a large debt due would not have relied to its detriment on the unencumbered status of a. particular asset without examining the schedules.
 
 [4]
 
 Moreover, Interfirst paid interest due on the certificate without requiring Country
 
 *623
 
 Junction to produce the certificate.
 
 [5]
 
 Due to the risk inherent in its actions, Interfirst required its own officer to indemnify Inter-first for liability arising out of the setoff. In these circumstances, as a matter of law, no special equities exist which entitle Inter-first to prevail over Citibank.
 

 III. CONCLUSION
 

 For the foregoing reasons, the judgment of the district court is affirmed. However, the district court erred in awarding Citibank $15,000 for attorney’s fees and expenses. The only evidence appearing in the record regarding attorney’s fees and expenses is an affidavit by Citibank’s attorney stating that the reasonable value of services rendered in this ease is $6,259.53. Thus, the district court’s award of $15,000 in attorney’s fees and expenses is reduced to $6,259.53.
 

 AFFIRMED IN PART, REVERSED AND RENDERED IN PART.
 

 [1]
 

 . This would occur, for example, where the funds deposited are held in trust. In that circumstance, the beneficial owner holds equitable title at the time the deposit is made.
 

 [2]
 

 . While the Texas cases cited by the parties all involve third party interests in existence when the funds were deposited, none of the cases cited relies on this factor in determining whether to apply the equitable rule.
 

 [3]
 

 . Whether Interfirst had reason to know that the certificate was subject to a perfected security interest is relevant in determining whether Interfirst's reliance was reasonable.
 
 See
 
 Skilton,
 
 The Secured Party’s Rights in a Debtor's Bank Account Under Article 9 of the Uniform Commercial Code,
 
 1977 S.Ill.L.Rev., 120, 195.
 

 [4]
 

 . Country Junction filed for bankruptcy on December 11, 1981. No evidence exists to indicate that Country Junction was in default on its obligations to Interfirst prior to filing for bankruptcy. The bankruptcy schedules revealing Citibank’s interest in the certificate were filed in February of 1982. Interfirst had no right to setoff funds on deposit until it petitioned the bankruptcy court and received relief from the automatic stay on September 22, 1984.
 
 See
 
 11 U.S.C. § 362(a)(7). On one occasion prior to obtaining relief from the automatic stay, Inter-first’s attorney attempted to examine the bankruptcy schedules. The attorney apparently failed to discover the appropriate schedule at that time.
 

 We do not hold that the existence of the bankruptcy schedules put Interfirst on constructive notice of Citibank's interest in the certificate of deposit. We merely conclude that given the facts known to Interfirst at the time of
 
 *623
 
 setoff, its reliance on the unencumbered status of the certificate without further inquiry was unreasonable.
 

 [5]
 

 . Interfirst contends that banks will ordinarily setoff funds without requiring production of the certificate of deposit since few debtors would voluntarily produce a certificate for this purpose. Whether this is in fact the ordinary practice is irrelevant in the instant case. Here Inter-first and Country Junction as debtor in possession had agreed that Interfirst would exercise its right of setoff. Interfirst also agreed to pay to Country Junction a portion of the interest due on that certificate. Thus, the usual reason for not requiring production of the certificate did not apply.