COMMERCIAL DISCOUNT CORPORATION, Respondent, v. MILWAUKEE WESTERN BANK, Appellant.

*No. 192. Argued October 29, 1973.—Decided January 21, 1974.*
(Also reported in 214 N. W. 2d 33.)

672

For the appellant there were briefs and oral argument by *Edward S. Grodin* of Milwaukee.

For the respondent there was a brief by *Allan Polacheck* and *E. H. Snyder*, both of Milwaukee, and oral argument by *Mr. Snyder*.

WILKIE, J.   We have often stated that summary judgment is a drastic remedy and is not a substitute for

demurrer, judgment on the pleadings, or a motion to make a pleading more definite and certain.[1] Of course, summary judgment should not be granted where the material facts are in dispute or permit inconsistent inferences as to necessary ultimate facts.[2] We have even said that a trial court, in the exercise of its discretion, need not in all cases decide questions of law upon a motion for summary judgment.[3]

The summary judgment statute vests discretion in the trial court as to whether the case should be tried. It follows that an order denying a motion for summary judgment will not be reversed unless it appears that the trial court has abused its legal discretion or has not exercised it.[4] The trial court will not be said to have abused its discretion in denying a motion for summary judgment "unless it either incorrectly decides a legal issue or it declines to decide a legal issue which is capable of resolution in a factual vacuum." [5]

In this case the defendant made a demurrer which was denied, and from which denial the defendant has not appealed. While the motion for summary judgment is not a substitute for demurrer this court must "initially examine the pleadings to determine the controlling issue or issues of law in order to determine whether the facts in dispute, if any, are material. . . . In such an examination the pleadings are to be given a reasonable and liberal construction. . . . Where there is no issue of fact that should be tried or where there is an issue of law that can

---

[1] *Capt. Soma Boat Line, Inc. v. Wisconsin Dells* (1973), 56 Wis. 2d 838, 203 N. W. 2d 369; *Seventeen Seventy-Six Peachtree Corp. v. Miller* (1969), 41 Wis. 2d 410, 164 N. W. 2d 278.

[2] *Matthew v. American Family Mut. Ins. Co.* (1972), 54 Wis. 2d 336, 195 N. W. 2d 611.

[3] *Zimmer v. Daun* (1968), 40 Wis. 2d 627, 162 N. W. 2d 626.

[4] *Hardscrabble Ski Area v. First Nat. Bank* (1969), 42 Wis. 2d 334, 166 N. W. 2d 191.

[5] *McConnell v. L. C. L. Transit Co.* (1969), 42 Wis. 2d 429, 435, 167 N. W. 2d 226.

be determined so as to conclude the case, summary judgment should be used." [6] Thus, we said in *Sullivan v. State:* [7]

"If, however, the real spirit and purpose of the summary judgment law are to be given effect, the search of the record should include the affidavits in support of the complaint, and where these affidavits disclose no cause of action, the complaint should be dismissed even though, without the affidavits and solely upon the pleadings, a demurrer would have to be overruled as to all or a part of it. . . . It seems quite as important to us that the plaintiff's cause of action should be summarily dismissed when no cause of action is shown by the pleading and affidavits, as it is that defendant's formally sufficient pleadings should be disregarded when the plaintiff has satisfied the terms of the statute and the defendant has failed to convince the court that there exists a genuine issue."

Before we examine the record and apply the correct principles on summary judgment motions to this case, an initial problem should be considered. The order denying summary judgment does not state any reason for such denial. This same situation existed in *Zimmer v. Daun.*[8] In that case this court sustained the denial of summary judgment by the trial court because we assumed that the trial court considered it wanted to have the facts of the case determined by trial rather than deciding that a policy (of automobile liability insurance) extended coverage to two defendants. Here the situation is different. Although during oral argument respondent's counsel asserted that the reason for the denial of the motion for summary judgment (given orally by the trial court) was that there were unresolved issues of material fact, there is nothing in the record to show that the existence of a factual

---

[6] *Capt. Soma Boat Line, Inc. v. Wisconsin Dells, supra,* footnote 1 at page 842.

[7] (1933), 213 Wis. 185, 195, 251 N. W. 251.

[8] *Supra,* footnote 3.

dispute was a specific reason given by the trial court for the denial of summary judgment. The reasons given by a trial court in a ruling from the bench are, of course, part of its decision.

The trial court could also have felt that the legal issues were not clearly decided in Wisconsin and that it wanted a full factual basis on which to make important policy decisions as to the liability claimed in this case. The most that can be assumed here is that the trial court decided that this case was not suitable for summary disposition, for whatever reason. The respondent's counsel prepared the order for the trial court to sign and the appellant's attorney did not ask that reasons be assigned after the order was issued. The trial court should not have signed an order which did not assign reasons for the action taken unless they were explained in a memorandum decision.

Under the circumstances the key summary judgment issues are (1) is there in reality a major fact dispute to be resolved by trial; (2) is it necessary to have a full factual basis developed on which to resolve legal issues which are involved in this dispute. Our consideration of these two summary judgment issues will follow our discussion of the principal legal issues in the case.

Before considering those legal issues we choose to consider another problem involved in this case as to summary judgment practice, namely, the length and form of affidavits in support of and in opposition to the motions for summary judgment. The affidavit of the plaintiff-respondent in this case consists in its entirety of over 200 pages of adverse examinations of officers of the defendant bank. Although it is proper to use adverse examinations as part of the factual proof required on motions for summary judgment, "where such a deposition is so voluminous that counsel, in fairness, ought to specify the portions relied upon, the trial court may order that

this be done." [9] In *Hyland Hall & Co. v. Madison Gas & Electric Co.*[10] this court stated that the use of voluminous adverse examinations was an imposition on both the trial court and this court on appeal. The court suggested that it would be better practice for parties to specify which portions of adverse examinations they deem to be material and on which they rely, and that the trial court would have the discretion to order such specification on proper application. Although in the instant case the defendant-appellant's counsel properly utilized only certain excerpts from an adverse deposition in support of his motion, he did not move the trial court to have the plaintiff-respondent do likewise.

Hereafter in using adverse examinations to support or refute a motion for summary judgment, the party using such adverse examination shall specify which portions of the adverse examination he deems to be material and on which he relies. This practice shall be mandatory and failure to follow this practice shall constitute good cause for the trial court or this court to disregard the adverse examination in appraising that party's position on the motion.

With these preliminary observations we now proceed to consider the two legal issues raised on this appeal:

1. Does a bank's right to setoff under sec. 895.07, Stats., extend to funds of third persons deposited in the debtor's name in an account with the bank?

2. Can a bank be held liable to a secured creditor as an aider and abettor of a debtor who deposits the cash proceeds of collateral subject to the creditor's perfected security interest in an account with said bank and draws checks on the account to the order of other claimants in violation of the security agreement and the secured creditor's rights in the collateral and its proceeds?

---

[9] *Clark v. London & Lancashire Indemnity Co.* (1963), 21 Wis. 2d 268, 275, 124 N. W. 2d 29; *Kanios v. Frederick* (1960), 10 Wis. 2d 358, 103 N. W. 2d 114.

[10] (1960), 11 Wis. 2d 238, 105 N. W. 2d 305.

*Legality of the bank's setoff.*

The Simplex Shoe Company opened two checking accounts with the defendant bank on August 16, 1965. On November 1st Simplex borrowed $240,000 from the defendant bank evidenced by a promissory note. This note became in default and mature prior to October 12, 1966, and demand was made of Simplex for full payment in a letter dated October 12, 1966. The bank thereafter charged the Simplex Shoe Company accounts against the outstanding debt and notified Simplex of such action by a letter dated November 4, 1966. The total amount remaining in the two accounts and which was set off by the bank was $7,057.66. Because the setoff reduced the balances in both accounts to zero, the bank refused to honor a check drawn by Simplex and made payable to the plaintiff in the amount of $6,956.65. In June of 1965 the plaintiff had made a large loan to Simplex Shoe Company and had filed a security agreement with the proper filing authorities which covered, among other things, the "accounts" of the Simplex Shoe Company and all "proceeds" of the named collateral.

The plaintiff claims that the funds set off by the bank were subject to the prior perfected security interest of the plaintiff and properly belonged to the plaintiff and that the appropriation of the remaining funds of Simplex was wrongful and in violation of the plaintiff's right thereto. The plaintiff further alleges that the defendant bank knew or should have known of the plaintiff's interest in the funds on deposit.

The defendant claims it had a statutory right to setoff under sec. 895.07, Stats.,[11] and that the only prerequisite to the exercise of the right is a mature obligation.

---

[11] "895.07 Set-offs. In the following cases a demand by one party may be set off against and as a defense, in whole or in part, to demands by the other:

The right of a bank to apply the funds of a third person deposited in the debtor's name on the debtor's obligation to the bank is discussed in 8 A. L. R. 3d at page 235. The annotation states that it is the well-settled rule that if a bank actually knows that sums deposited in the account of one of its debtors belong to a third person, it cannot apply such funds against the debtor's obligation to it. A bank is also denied the right of setoff where it has knowledge of circumstances sufficient to necessitate inquiry concerning the sums.

However, the courts are divided about the bank's right to setoff funds belonging to a third person where the bank lacks knowledge of such claim or knowledge of facts requiring it to inquire about such sums. A considerable number of courts permit setoff in this situation.

A growing number of courts, however, follow the "equitable" rule that even if a bank lacks knowledge that the deposited sums belong to a third person and lacks knowledge of facts necessitating further inquiry, it cannot apply the funds against the debtor's obligation where it has not changed its position or has no superior equities. This rule, according to the annotation, is followed in Colorado, Indiana, Michigan, Minnesota, Nebraska, Oklahoma, Pennsylvania, South Carolina, South Dakota,

"(1) It must be a demand arising upon a judgment or upon contract, express or implied, whether such contract be written or unwritten, sealed or without seal; and if it be founded upon a bond or other contract having a penalty the sum equitably due by virtue of its conditions only shall be set off.

"(2) It must be due to him in his own right, either as being the original creditor or payee or as being the assignee and owner of the demand.

"(3) It must have existed at the time of the commencement of the action, and must then have belonged to the party claiming to set off the same.

"(4) It can be allowed only in actions founded upon demands which could themselves be the subject of set-off according to law.

". . . ."

and Texas. The federal courts are split, some applying the "equitable" rule and others applying the rule that without knowledge a bank is entitled to setoff. This split is occasioned by conflicting interpretations of United States Supreme Court cases on the subject. In an early case [12] the supreme court enunciated the equitable rule. In three later cases the supreme court denied setoff where the bank had actual knowledge. The lower federal courts have split in their interpretation of these cases. Those following the equitable rule have relied on the *Bank of Metropolis Case* and have confined the later cases to their facts. [13]

In Wisconsin, in *Boyle v. Northwestern Nat. Bank of Superior*,[14] this court denied a bank the right of setoff against funds deposited by a commission merchant where the funds belonged to the customers for whom he had sold goods on consignment. The court quoted an English case with approval which said:

" 'If money held by a person in a fiduciary character, though not as trustee, has been paid by him to his account at his banker's, the person for whom he held the money can follow it, and has a charge on the balance in the banker's hands.' *In re Hallett's Estate*, L. R. 13 Ch. Div. 696." [15]

This is a very general statement which does not restrict the third party's recovery to situations where the bank has actual knowledge or knowledge of facts necessitating inquiry. However, in the statement of facts preceding the opinion it is apparent that the bank was notified by its depositor that the account contained funds belonging to his customers.

[12] *Bank of Metropolis v. New England Bank* (1848), 47 U. S. (6 How.) 212, 12 L. Ed. 409.

[13] Annot. (1966), 8 A. L. R. 3d 235, 249, note 16.

[14] (1905), 125 Wis. 498, 103 N. W. 1123, 104 N. W. 917.

[15] *Id.* at page 507.

In *Smith v. American Nat. Bank,*[16] this court allowed a bank to set off against an attorney's account in which he had commingled clients' funds. The court indicated the circumstances did not create a trust account. The defendant-appellant here argues that the *Boyle Case* (the *Smith Case* is not cited by either party) indicates that the funds must be in some sort of trust account in order to bar a bank's right of setoff. Neither of the cases made that a holding. The decision in the *Smith Case* was based mainly on the fact that the attorney who opposed the setoff was not the owner of the funds and that the true owners should be the ones to sue for their recovery. The only other basis on which the attorney could oppose the bank's action would be on the basis that the account was a special account not subject to setoff. The court was not holding in this case that setoff is barred only if the funds are in a true trust account.

In *Lincoln Crest Realty v. Standard Apartment Development,*[17] this court upheld the bank's setoff right based on the fact that the third party's claim to the money did not become vested until after the bank had acted. However, the court did say that if the money belonged to Lincoln Crest by right of assignment the bank could not offset an obligation owed to the bank by the assignor-depositor. The court did not indicate that the denial of the right of setoff would be predicated on the bank's knowledge of the claim. However, the facts do reveal that the bank did have actual knowledge of the assignment.

We choose to follow the "equitable" rule that knowledge or lack of it does not determine the rights of a bank to setoff against the account of a depositor which contains funds to which a third party has a valid prior

---

[16] (1934), 215 Wis. 288, 254 N. W. 548.

[17] Ante, p. 4, 211 N. W. 2d 501.

claim. The statute on which the defendant relies does not discuss the right to setoff against funds of a third person, deposited in the debtor's bank account, and the Wisconsin cases cited support a general rule that if the third person can prove his claim he is entitled to recover the money seized from the depositor's account which belongs to him. The "equitable" rule is the better rule because it eliminates the problems of proving knowledge on the part of an institution. This rule is not harsh as applied to the bank because a bank is in a superior position to all other creditors because it has funds of its debtor at its disposal to immediately seize and apply as a setoff. (The right to setoff is based on the dual relationship of the bank and depositor—the bank being a debtor to the depositor and a creditor on a loan at the same time.) Other creditors can exercise the right to setoff only as a partial or full defense to an action brought against them by the debtor/creditor.

*Security interests in bank accounts and commingling of funds.*

The defendant-appellant's first line of defense in this entire controversy has been to deny that the plaintiff had a security interest in the funds which the debtor may have deposited in its account with the bank. The defendant urges that a security interest in instruments (checks and money) can only be perfected by taking possession (sec. 409.304 (1), Stats.). However, sec. 409.306 clearly contemplates that a properly perfected security interest in collateral continues in the proceeds of that collateral including collections, and the section clearly indicates that money and checks are to be considered cash proceeds. Sec. 409.304 has not been considered to prevail over the clear expression of sec. 409.306 that a security interest

in cash proceeds does not require the taking of possession. In a Harvard law review article [18] it was stated that:

"The Code excludes bank deposits as original collateral. [Sec. 9–104 (k)] . . . In spite of their exclusion in section 9–104, deposit accounts are expressly included under the proceeds provisions of article 9, as is necessary in order to make the proceeds sections work."

Any number of cases can be cited which recognize that the secured party's interest in cash proceeds continues into bank deposit accounts in which debtors have deposited collections in violation of the security agreement.[19] Secs. 409.304 and 409.306 may be anomalous, but the recognition of the continuing security interest in instruments such as checks and cash (money is not classified in the code but placing it in the category of instruments is the only sensible thing to do) which are the proceeds of other collateral is not a difficult thing to accept when you realize that these negotiable instruments are subject to the holder in due course provisions.

Thus, a further question is presented of whether the bank is a holder in due course. Sec. 404.208, Stats., provides for the bank to acquire a security interest in items presented for collection under certain circumstances.[20] This security interest is considered to be

[18] 79 Harvard L. Rev. (1965), 229, 263, Coogan, Kripke and Weiss, *The Outer Fringes of Article 9: Subordinate Agreements, Security Interests in Money and Deposits, Negative Pledge Clauses, and Participation Agreements.*

[19] *Associates Discount Corp. v. Fidelity Union Trust Co.* (1970), 111 N. J. Super. 353, 268 Atl. 2d 330; *Howarth v. Universal C. I. T. Credit Corp.* (D. C. Pa. 1962), 203 Fed. Supp. 279; *Morrison Steel Co. v. Gurtman* (1971), 113 N. J. Super. 474, 274 Atl. 2d 306.

[20] "404.208 Security interest of collecting bank in items, accompanying documents and proceeds. (1) A bank has a security interest in an item and any accompanying documents or the proceeds of either:

"(a) In case of an item deposited in an account to the extent to which credit given for the item has been withdrawn or applied;

"value" for purposes of becoming a holder in due course of the item. If the bank meets the other requirements of sec. 403.302 it can become a holder in due course of an "item and any accompanying documents or the proceeds of either." It is not clear that the circumstances under which the defendant bank could have become a holder in due course existed. It would be necessary to know the exact dates on which the checks in question were deposited and the dates on which the checks drawn on the account were certified or debited to the account. This would establish whether final settlement had occurred prior to any withdrawals from the account. If so, the bank would never have acquired a security interest in the checks and their proceeds.

However, in view of our following discussion on the liability of the bank, it is unnecessary to base nonliability on the concepts of holder in due course.

*Can the bank be held liable as an aider and abettor?*

It is clear that the plaintiff cannot recover the proceeds which were diverted from the various government agencies who were the payees of the checks drawn on the account. These parties are clearly holders in due course.[21] Therefore, the plaintiff is seeking some way

---

"(b) In case of an item for which it has given credit available for withdrawal as of right, to the extent of the credit given whether or not the credit is drawn upon and whether or not there is a right of charge-back; or

"(c) If it makes an advance on or against the item.

". . . ."

[21] *Uniform Commercial Code*, American Law Institute, 1962 Official Text with Comments, p. 670, art. 9, sec. 9–306, Comment 2 (c) : "Where cash proceeds are covered into the debtor's checking account and paid out in the operation of the debtor's business, recipients of the funds of course take free of any claim which the secured party may have in them as proceeds. What has been said relates to payments and transfers in ordinary course. The law of

to hold the bank liable for the amounts which were drawn on the account. The plaintiff has alleged that the bank "in violation of plaintiff's rights to said sum and for defendant's own benefit and gain, aided and abetted Simplex in diverting all of said funds to the payment of other obligations . . . ."

"Aiding and abetting" at least under the criminal statute, sec. 939.05 (2) (b), has been interpreted to require knowledge.[22] Under the complicity theory a person is liable only if he undertakes acts which objectively aid another in execution of a crime and if he consciously desires or intends that his conduct will yield such assistance.[23] Here, of course, no crime is involved.[24] An action for conversion is a civil remedy. The plaintiff is charging the defendant with aiding and abetting the diversion, or unauthorized disposal of collateral in which the plaintiff had a perfected security interest. In Black's, *Law Dictionary* (4th ed.), "aid and assist" was illustrated by an Alabama case, *In re Gattina* (1919), 203 Ala. 517, 84 So. 760. The case stated that the phrase "aided and assisted," as used in a statute prohibiting the sale of intoxicating liquors with regard to the condemnation or confiscation of vehicles, implies either knowledge on the part of the owner that the vehicle was being used for unlawful transportation, or such negligence or want of care as to charge him with such knowledge or notice.

fraudulent conveyances would no doubt in appropriate cases support recovery of proceeds by a secured party from a transferee out of ordinary course or otherwise in collusion with the debtor to defraud the secured party."

[22] *State v. Haugen* (1971), 52 Wis. 2d 791, 191 N. W. 2d 12; *Hawpetoss v. State* (1971), 52 Wis. 2d 71, 187 N. W. 2d 823; *Krueger v. State* (1968), 39 Wis. 2d 729, 159 N. W. 2d 597.

[23] *State v. Nutley* (1964), 24 Wis. 2d 527, 129 N. W. 2d 155.

[24] Under Illinois law unauthorized disposal of collateral is a criminal offense. *First Nat. Bank of Lansing v. Padjen* (1965), 61 Ill. App. 2d 310, 210 N. E. 2d 332.

In essence, the plaintiff is charging the defendant with knowledge that the funds deposited and drawn on the Simplex account belonged to another person. In *Gendler v. Sibley State Bank*[25] the question of a bank's liability for receiving a deposit of money belonging to another person was discussed. The court concluded that to be liable the bank must be in conspiracy with the depositor or actually know of the wrongdoing of the depositor— mere means of knowledge would not be sufficient. The court concluded that under Iowa law a bank deposit is for the benefit and convenience of the depositor and though the bank has use of money for commercial gain, it assumes no further obligation than to pay the amount received when demanded. It was further stated that the liability of a bank to an adverse claimant to a deposit is based on tort and not on contract and that to constitute a "tort" there must be a duty owing by one party to another and a breach of that duty. The court concluded that the only duty owed by a bank to a third person claiming money deposited is not to release the deposit to the depositor unreasonably soon after the claimant makes known his adverse claim, and that it is such claimant's duty promptly to institute necessary legal proceedings to stop payment to depositor by court order or process; and if claimant does not do so the bank is released from liability to the claimant. In this case, Frank Bergen, executive officer of the plaintiff corporation, testified in his deposition that the plaintiff had not at any time prior to November 3, 1966, indicated to the defendant bank that it should not honor checks drawn by Simplex. Under *Gendler* the knowledge that plaintiff had a perfected security interest in "accounts" and their proceeds would not support liability for accepting deposits which were actually covered by such interest. This knowledge would be the "mere means of knowledge." Only further in-

---

[25] (D. C. Iowa 1945), 62 Fed. Supp. 805.

quiry would reveal whether the particular funds deposited were covered by the security agreement and whether such deposit was in fact contrary to any agreement of the parties or without the approval of the secured party. However, according to *Gendler* the bank owes the third party no duty of inquiry. It only owes the third-party claimant a duty to wait a reasonable time after notice of the claim to allow the claimant to begin legal action. Here the plaintiff did not make demand on the defendant bank until approximately thirty days after the checks in question were drawn.

### *Are there material facts in dispute?*

Under the applicable law as detailed above we are convinced that there are no material issues in dispute as to either the first or second cause of action. Under the reasoning of *Gendler* the defendant is entitled to summary judgment on the first cause of action. It is irrelevant whether there are disputes as to the knowledge of defendant bank with regard to the plaintiff's financial relationship to its depositor. Under *Gendler* the bank did not owe a duty of inquiry to the plaintiff. The only duty it owed was to stop processing checks once the plaintiff made a claim to the bank accounts, to allow the plaintiff to take appropriate legal action.

We conclude, therefore, that in Wisconsin under the circumstances here there is no such cause of action against a bank, as contended for by plaintiff, in aiding and abetting a depositor in diverting funds from the payment owed to a secured creditor.

As to the second cause of action for the wrongful setoff by the defendant bank, again there are no material facts in dispute and the plaintiff is entitled to summary judgment on its second cause of action.

We also do not feel that further facts which could be developed on trial are needed to resolve the legal issues

involved in this case and, therefore, a denial of summary judgment on the authority of *Zimmer v. Daun* [26] would not be appropriate.

*By the Court.*—Order affirmed in part; reversed in part; cause remanded for further proceedings not inconsistent with this opinion.