[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 299 
Defendant, Realty Growth Investors (hereinafter RGI] appeals from a judgment in the amount of $5,592.39 plus interest and costs rendered by the Circuit Court of Tuscaloosa County in favor of plaintiff, Commercial Industrial Bank of Memphis, Tennessee [hereinafter C I].
The record reveals the following pertinent facts:
RGI held a mortgage on the real and personal property of I.H.M., Inc., d/b/a Rodeway Inn [hereinafter IHM]. The mortgage became due on April 30, 1975. Subsequently, RGI obtained a writ of seizure on May 4, 1976 covering, among other things, a checking account owned by IHM at First Alabama Bank of Tuscaloosa, N.A. [hereinafter First Alabama Bank]. The account was known as the Tuscaloosa Hotel Company Depository Account. It had $5,592.30 on deposit the day of the seizure. The writ of seizure was designated as Civil Action No. 7571. First Alabama Bank received the writ of seizure issued by the circuit court on May 4, 1976 at 4:25 p.m. It thereafter transferred the account to RGI. C I was not a party to the writ of seizure action, No. 7571. Final judgment was rendered on Civil Action No. 7571 on June 22, 1977.
On the day of the writ of seizure, May 4, 1976, there were four checks outstanding drawn upon IHM's checking account known as Tuscaloosa Hotel Company Depository Account at First Alabama Bank. Check No. 287, dated April 29, 1976, made payable to IHM's Tuscaloosa Hotel Company Operating Account in the amount of $1,545.42 was deposited by IHM in its account No. 03-1240773 in C I Bank on April 29, 1976. Check No. 289, dated April 30, 1976, made payable to Tuscaloosa Hotel Company Operating Account in the amount of $4,136.79, Check No. 290, dated May 3, 1976, made payable to Tuscaloosa Hotel Company Operating Account in the amount of $3,685.97, and check No. 291, dated May 5, 1976, made payable to Tuscaloosa Hotel Company Operating Account in the amount of $950.70 *Page 300 
were all deposited by IHM in its account No. 03-1240773 in C 
I Bank on May 4, 1976, the date of the writ of seizure.
According to the record, C I Bank presented the four deposited checks to First Alabama Bank on May 5 and 6, respectively. However, the checks were dishonored and returned to C I with the words "funds held under writ of seizure" on May 11, 1976. C I received an actual copy of the writ of seizure from First Alabama Bank a few days after it was mailed on May 13, 1976. During the interim, between the time of the depositing of the checks in the account known as Tuscaloosa Hotel Company Operating Account with C I Bank and the receipt of notice of dishonor of the checks by C I on May 11, 1976, C I allowed Tuscaloosa Hotel Company Operating Account to withdraw all funds credited to the account for the checks deposited by honoring and paying other checks drawn on said account. C I's extension of credit with withdrawals resulted in an overdraft of $8,030.49.* This figure was derived by subtracting the amount on deposit ($2,291.29) on May 11, 1976 in the Tuscaloosa Hotel Company Operating Account in C I Bank from $10,318.88, the total amount of the four deposited checks.
C I filed a complaint against Rodeway Inn, IHM (drawer) and Tuscaloosa Hotel Company, RGI and First Alabama Bank (the drawee/payor bank) on April 15, 1977.
Summary judgment was granted against Tuscaloosa Hotel Company and IHM and in favor of First Alabama Bank on July 29, 1977. RGI's motions for summary judgment were denied on August 29, 1977 and October 12, 1977; therefore, C I and RGI were the only parties remaining in the suit who were not in default.
There are essentially two primary issues involved in this appeal. The first issue is whether C I possessed a security interest under the Uniform Commercial Code, or any other interest, in IHM's checking account at First Alabama Bank. The second issue is whether C I was an indispensable party to the seizure action, No. 7571, by RGI against IHM under Rule 19 of the Alabama Rules of Civil Procedure.
 I.
RGI contends that C I did not possess a security interest in the seized bank account at First Alabama Bank, but rather C I's security interest, if it had any, was in the four checks and their "proceeds." Code of Alabama 1975, § 7-4-208 (1). C 
I claims that it has an interest in the account funds, i.e.
proceeds. Obviously, C I and RGI disagree over the meaning of the word "proceeds." RGI contends "proceeds" is the credit which C I extended for the checks deposited by IHM. On the other hand, C I contends that "proceeds" means the funds upon which the four checks were drawn, i.e. the account which RGI seized. Consequently, C I claims a security interest in the seized bank account.
RGI urges that Code of Alabama 1975, § 7-4-303 is the rule of priority that should be applied to the instant case. This argument presumes there are no conflicting security interests between RGI and C I in the same thing, i.e. the seized bank account upon which the checks were drawn. Therefore, Code of Alabama 1975, § 7-4-208 (3)(c), a priority section for conflicting security interests in proceeds would arguably not apply.
In pertinent part, Code of Alabama 1975, § 7-4-208 states that:
 (1) A bank has a security interest in an item and any accompanying documents or the proceeds of either:
 (a) In case of an item deposited in an account to the extent to which credit given for the item has been withdrawn or applied;
. . . . .
 (3) Receipt by a collecting bank of a final settlement for an item is a realization on its security interest in the item, accompanying documents and proceeds. To the extent and so long as the bank does not receive final settlement for the *Page 301 
item or give up possession of the item or accompanying documents for purposes other than collection, the security interest continues and is subject to the provisions of article 9 except that:
 (a) No security agreement is necessary to make the security interest enforceable (subsection (1)(b) of section 7-9-203); and
 (b) No filing is required to perfect the security interest;
 (c) The security interest has priority over conflicting perfected security interests in the item, accompanying documents or proceeds. [Emphasis supplied.]
C I strongly urges that it has priority over RGI's security interest in the seized bank account because Code of Alabama 1975, § 7-4-208 (3)(c) is the appropriate rule of priority which governs the controversy. Thus, C I's security interest in "proceeds" would prevail over RGI's security interest if "proceeds" includes, in fact, the bank account upon which the checks were drawn.
RGI's proposed rule of priority, Code of Alabama 1975, §7-4-303, in pertinent part, states:
 (1) Any knowledge, notice or stop order received by, legal process served upon or setoff exercised by a payor bank, whether or not effective under other rules of law to terminate, suspend or modify the bank's right or duty to pay an item or to charge its customer's account for the item, comes too late to so terminate, suspend or modify such right or duty if
the knowledge, notice, stop order or legal process is received or served and a reasonable time for the bank to act thereon expires or the setoff is exercised after the bank has done any of the following:
(a) Accepted or certified the item;
(b) Paid the item in cash;
(c) Settled for the item . . .
 (d) Completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith or otherwise has evidenced by examination of such indicated account and by action its decision to pay the item; or
 (e) Become accountable for the amount of the item
under subsection (1)(d) of section 7-4-213 and section 7-4-302 dealing with the payor bank's responsibility for late return of items. [Emphasis supplied.]
It should be noted that the record reveals "legal process," referred to in the above quoted sections, did not come too late to be effective and modify or terminate the payor bank's (First Alabama Bank) duty to pay on the items. The writ of seizure order of May 4, 1976 preceded any kind of presentment, much less any actions required under the Code of Alabama 1975, §7-4-303 (1)(a)-(e). Furthermore, the reason given for summary judgment in favor of First Alabama Bank was the justification of First Alabama Bank in dishonoring the checks and obeying the writ of seizure. First Alabama had no choice but to obey the writ.
In order to decide which priority rule applies, this court finds it imperative to define "proceeds" for purposes of this case as it is used in Code of Alabama 1975, § 7-4-208. The word "proceeds" is defined in Code of Alabama 1975, § 7-9-306 (1), as including: "[W]hatever is received when collateral or proceeds are sold, exchanged, collected or otherwise disposed of. The term also includes the account arising when the right to payment is earned under a contract right."
The word "collateral" is defined in Code of Alabama 1975, § 7-9-105 as: "[T]he property subject to a security interest. . . ." In the instant case, the checks could be considered collateral in which the depository bank, C I, has a security interest because Code of Alabama 1975, § 7-4-208 refers to a security interest in the "item" and Code of Alabama 1975, §7-4-104 (1)(g) defines "item" as: "[A]ny instrument for the payment of money even though it is not negotiable but does not include money." Thus, C I had a security interest in the items or checks and those checks were the collateral. According to Code of Alabama 1975, § 7-9-306 (1), whatever *Page 302 
is received for the sale, exchange, collection, or disposal of the collateral, i.e. the checks, is "proceeds." When the checks were presented to First Alabama Bank, they were dishonored and returned to the depository bank, C I. The checks were not exchanged or disposed of for money or any other thing of value in any sense because the bank was under a writ of seizure order. We agree with RGI's contention that "proceeds" should logically be something that follows a transaction or emanates from it. Nothing followed or emanated from the transaction with First Alabama, for the checks were dishonored. However, we do not agree with RGI's contention that "proceeds" as used in the UCC was the credit which was extended by C I to its depositor's, i.e. IHM'S, account.
Code of Alabama 1975, § 7-4-213, Comment 2, sheds some light upon this definitional dilemma. It states:
 If an item being collected moves through several states, e.g., is deposited for collection in California, moves through two or three California banks to the Federal Reserve Bank of San Francisco, to the Federal Reserve Bank of Boston, to a payor bank in Maine, the collection process involves the eastward journey of the item from California to Maine and the westward journey of the proceeds from Maine to California. . . . This policy recognizes that final payment does not take place, in such hypothetical case, on the journey of the item eastward. It also adopts the view that neither does final payment occur on the journey westward because what in fact is journeying westward are proceeds of the item.
We find from this comment that "proceeds" does not include the seized bank account in First Alabama Bank upon which the checks were drawn. The funds on deposit in First Alabama Bank remained purely funds because First Alabama did nothing to convert the funds into "proceeds." Via analogy to the hypothetical given in Comment 2 to the Code of Alabama 1975, §7-4-213, the writ of seizure of May 4, 1976 prevented any westward travel of "proceeds" to the depository bank, C I, from the payor bank, First Alabama Bank. No "settlement" by First Alabama Bank was possible therefore, the seized checking account upon which the checks were drawn could not have become "proceeds." If any attempt at settlement had been made by First Alabama, then "proceeds" would have been returned to C I in exchange for the checks. Should this have happened, the Code of Alabama 1975, § 7-9-306 (1) definition of "proceeds" would have then been satisfied. Code of Alabama 1975, § 7-4-104 (1)(j) has defined "settle" as any payment "in cash, by clearinghouse settlement, in a charge or credit or by remittance, or otherwise as instructed." Thus, it appears that the Code of Alabama 1975, § 7-4-208 (1)(a) merely uses the language "to the extent to which credit given for the item has been withdrawn or applied," as a measuring device to determine the amount of a security interest in the "item" or "proceeds." That language, itself, does not define "proceeds." Furthermore, Comment 1 of Code of Alabama 1975, § 7-4-213 states:
 Final payment of an item is important for a number of reasons. It is one of several factors determining the relative priorities between items and notices, stop-orders, legal process and set-offs (Section 7-4-303). It is the "end of the line" in the collection process and the "turn around" point commencing the return flow of proceeds. [Emphasis supplied.]
This quote further suggests that some action on the part of the payor bank, namely First Alabama Bank in this case, must occur before "proceeds" actually come into existence. First Alabama commenced no actions of acceptance, settlement, payment, or otherwise because its hands were tied under the writ of seizure order.
C I asserts that its right to receive final settlement for the credit it allowed IHM, its depositor, to withdraw is no different from "the account arising when the right to payment is earned under a contract right." Code of Alabama 1975, § 7-9-306 (1). This assertion is without foundation. *Page 303 
"Contract right" is defined under Code of Alabama 1975, § 7-9-106 as "any right to payment under a contract not yet earned by performance and not evidenced by an instrument or chattel paper." "Account" is defined under Code of Alabama 1975, § 7-9-106 as "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper." C I's right to settlement does not fall under § 7-9-306, for instruments (i.e. checks) exist which would evidence any account established on behalf of C 
I.
It is further noted that Code of Alabama 1975, § 7-4-208 (3) provides that a security interest under that section is subject to article 9 provisions. A key provision in article 9 is Code of Alabama 1975, § 7-9-104 (k), which provides:
This article does not apply:
. . . . .
 (k) To a transfer in whole or in part of any of the following: any claim arising out of tort; any deposit, savings, passbook or like account maintained with a bank, savings and loan association, credit union or like organization. . . .
RGI urges that this provision specifically prohibits the creation and attachment of any security interest to a bank account. At the same time RGI itself argues that it has a security interest in the bank account. It is important to note that from early UCC days there was great debate over the meaning of this exclusion. Domain Industries, Inc. v. FirstSecurity Bank Trust Co., Iowa, 230 N.W.2d 165, 16 UCC Rep. 1417 (1975), discusses this provision of the Code and finds that this provision excludes only "the pledge of accounts asoriginal collateral." The Iowa Supreme Court used its newly adopted amendment of § 9-104 (k) in the 1972 revision of article 9 to help explain the exclusion as it was originally written. The court concluded there was no change in the meaning of the statute and that there may be a security interest in a bank account to the extent it includes identifiable proceeds of other collateral.
Comment 7 to Code of Alabama 1975, § 7-9-104 reads:
 Rights under life insurance and other policies, and deposit accounts, are often put up as collateral. Such transactions are often quite special, do not fit easily under a general commercial statute and are adequately covered by existing law. Paragraphs (g) and (k) make appropriate exclusions.
This comment further explains what type of transaction involving bank accounts is excluded from article 9. C I, as a collecting bank, could have possibly held a security interest in the First Alabama bank account if the account had contained proceeds. Commercial Discount Corp. v. Milwaukee Western Bank,61 Wis.2d 671, 214 N.W.2d 33, 13 UCC Rep. 1201 (1974), concerned a bank's right to setoff against funds in a depositor's account versus a creditor claiming a security interest in the funds. The court held that a security interest in cash proceeds (i.e. checks and cash) continues into bank deposit accounts in which debtors have deposited collections. In the case at bar C I had a security interest in checks, however these checks were not themselves proceeds of collateral; nor were they ever properly disposed of in order to effect an "exchange" in which proceeds would have resulted and thus become identifiable and traceable.
C I contends that because of its holder in due course status, it possesses an interest in the bank account superior to RGI's interest. This contention is founded upon Code of Alabama 1975, § 7-3-305. This section reads:
 To the extent that a holder is a holder in due course he takes the instrument free from:
(1) All claims to it on the part of any person; and
 (2) All defenses of any party to the instrument with whom the holder has not dealt. . . .
C I's holder in due course status does not give it a superior interest over RGI for RHI did not make any claim to the instrument nor was RGI a party to the instrument. *Page 304 
In final analysis, Code of Alabama 1975, § 7-9-303 appears to be the appropriate priority section to apply to this case. There were no conflicting security interests between RGI and C I; therefore, Code of Alabama 1975, § 7-4-208 (3)(c) does not apply. In reference to Section 7-9-303 of the UCC, White 
Summers, Uniform Commercial Code, § 17-7, at 589 (1972) states:
 [T]he drawee may dishonor the check because the customer's creditors have seized the funds in the account to satisfy debts owed them. Section 4-303 provides a rule to settle the rights of the holder of a check demanding payment when certain events intervene to prevent payment from the drawer's account.
Comment 1 of the Code of Alabama 1975, § 7-4-303 says that subsection (1) states the rule for determining priorities when an event such as attachment of the drawer's account freezes the funds available to pay an item. In applying Code of Alabama 1975, § 7-9-303, it is obvious the legal process of seizure occurred before the payor bank, First Alabama Bank, had done any of the following: accepted or certified the checks, paid the items in cash, settled for the item without reserving a right to settlement, or completed the process of posting. Therefore, the writ of seizure prevails over C I's demand for payment. The trial court's judgment in favor of C I on this issue is erroneous.
 II.
The second primary issue is whether C I should be considered an indispensable party to RGI's seizure action against IHM under Rule 19 of the Alabama Rules of Civil Procedure. Rule 19 states:
 A person who is subject to jurisdiction of the court shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. [Emphasis supplied.]
As noted above, we have decided that C I did not possess a security interest in IHM's bank account, and Rule 19, ARCP, uses the word "interest" rather than security interest; consequently, it is at least arguable that C I possessed sufficient interest in the seized bank account to be considered an indispensable party, regardless of any security interest. Such an argument cannot prevail, however, for "[t]he `interest relating to the subject matter of the action' that makes an absent person a party needed for just adjudication must be a legally protected interest, not merely a financial interest or interest of convenience." 3A Moore's Federal Practice, § 19.07-1[2], pp. 19-129.
C I did not present checks drawn on the account in First Alabama Bank until after the seizure action had been filed. The drawee bank, First Alabama Bank, was not obligated to pay the items because the seizure action was effective and binding on it before presentment. In fact, Code of Alabama 1975, § 7-3-409
provides that a check does not assign any of the drawee bank's funds, and the drawee is not liable on the instrument until it accepts it. C I, therefore, may have acquired an interest in the checks, but its interest in the bank account upon which the checks were drawn was not a legally protected interest in the account.
Rule 19 (c), ARCP, provides: "A pleading asserting a claim for relief shall state the names, if known to the pleader, of any persons as described in subdivision (a) (1)-(2) hereof who are not joined, and the reasons why they are not joined." [Emphasis supplied.] The record suggests that RGI did not know of C I's existence on the day it filed its complaint against IHM on May 4, 1976. Current Alabama practice would have allowed want of an indispensable party to be raised at the trial on the merits or for the first time on appeal. Final judgment was not entered in the case of *Page 305 
RGI versus IHM until June 22, 1977; therefore, we conclude the C I should have raised such objection at the times available. Objection to want of an indispensable party to a previous action is not appropriately raised in a totally separate second action.
In Mead Corporation v. City of Birmingham, Ala.,350 So.2d 419 (1977), the Supreme Court of Alabama held that absence of an indispensable party may be raised for the first time on appeal. The appeal in question, however, is the appeal of the case in which there was the possible absence of an indispensable party. It has been suggested to this court that there was no appeal from the seizure action; however, there was a trial during which the matter could have been brought up.
We therefore conclude that C I was not an indispensable party to RGI's seizure action against IHM.
 III.
There are three other issues argued in the parties' briefs that we will now consider.
The first concerns RGI's title to the funds on deposit in IHM's account in First Alabama Bank. It appears to this court that RGI obtained clear title to IHM's bank account in First Alabama Bank. As previously discussed, C I did not possess a security interest in the bank account; therefore, based on the facts before us, we conclude that the title was clearly reposed in RGI.
Another issue is whether C I should recover on a theory of unjust enrichment. We believe this issue to be without merit. RGI was not unjustly enriched by receiving the bank account. Any credit C I extended to IHM for the checks deposited which was used to pay expenses of the Rodeway Inn. subsequently acquired by RGI, did not benefit RGI. The credit directly benefitted IHM.
Next, appellee argues that Code of Alabama 1975, § 6-6-250
and Rule 64 (b) of the Alabama Rules of Civil Procedure are unconstitutional. However, this issue was not determined by the trial court. Consequently, we will not consider it on this appeal.
Had the constitutional issue been properly presented to us, we would have had difficulty deciding that C I had standing to raise the issue in the first place. Smith v. Potts, 293 Ala. 419, 304 So.2d 578 (1974) addresses the issue of standing and asserts that the court must consider the position of the plaintiffs and whether they are or will be injured by the application of the act in question. It would be difficult to establish injury in the instant case because C I possesses no interest in the bank account which was seized under the alleged unconstitutional statute and Alabama Rules of Civil Procedure [64 (b)]. The necessity of showing injury in the present or future is apparent from the Alabama cases. Jones v. Black,48 Ala. 540 (1872); Caiola v. City of Birmingham, 288 Ala. 486,262 So.2d 602 (1972). McCord v. Stephens, 295 Ala. 162,325 So.2d 155 (1975) held that a person does not have standing to question the constitutionality of a statute unless that person has some right specifically affected by it. Following this reasoning, we would have difficulty finding that C I possessed rights specifically affected by Title 7, § 918 (now Code of Alabama 1975, § 6-6-250).
The judgment of the trial court is reversed and the cause remanded for entry of a judgment not inconsistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
WRIGHT, P.J., and HOLMES, J., concur.
* (Included $3.00 insufficient charge). *Page 306