TEXTRON FINANCIAL CORPORATION, Plaintiff-Respondent,

v.

FIRSTAR BANK WISCONSIN, f/k/a Firstar Bank Eau Claire, N.A., Defendant-Appellant.

Court of Appeals

*No. 97–1938. Submitted on briefs January 12, 1998.—Decided February 24, 1998.*

(Also reported in 579 N.W.2d 48.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeffrey W. Guettinger* of *Danielson, Guettinger, Richie, Manydeeds & Weinke, S.C.*, Eau Claire.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Penny G. Gentges* and *Arthur M. Moglowsky* of *Bass & Maglowsky, S.C.*, Milwaukee.

Before Cane, P.J., Myse and Hoover, JJ.

MYSE, J.   Firstar Bank Wisconsin appeals a summary judgment concluding that the bank wrongly converted proceeds of collateral subject to Textron Financial Corporation's purchase money security interest (PMSI). Firstar contends that there was insufficient proof to demonstrate Textron had a PMSI in the proceeds; that Textron failed to properly identify the proceeds in the bank account because they were commingled with other cash; and that because its taking of the proceeds was in the ordinary course of business, Textron's PMSI security interest lost its priority. We first conclude that there is sufficient proof to demonstrate that Textron had a PMSI in proceeds deposited into the Firstar bank account, and that Textron sufficiently identified those proceeds subject to its security interest. We also conclude, however, that the trial court's determination that the payment to Firstar was not made in the ordinary course of business was erroneous, and therefore remand the cause for further proceedings.

Sport Center, Inc., d/b/a Nelson's Sport Center, operated a retail boat and accessory business near Eau Claire. Nelson's had loans with Firstar that were secured by a blanket security interest in all of Nelson's

assets except those specifically pledged elsewhere. Nelson's also had a security agreement with Textron in order to finance boats, trailers, motors and other marine products offered for sale. It is not disputed that both Firstar and Textron properly filed these security interests; that Firstar's security agreement was filed first; and that Textron gave Firstar the required notice of its purchase money security agreement in Textron-financed inventory.

After receiving final payment on a boat allegedly financed by Textron, Nelson's deposited the full amount in its checking account with Firstar bank. Nelson's failed to promptly pay Textron the invoice cost on the boat, thereby violating its security agreement.

Three days later, with Nelson's permission, Firstar recovered funds from Nelson's checking account to be applied to a delinquent loan. Firstar claimed it had no notice that the funds were proceeds from inventory sold under Textron's PMSI, and further claimed that the payment arrangement occurred only after the bank had contacted Nelson's several times for loan payments. On the same day that Firstar recovered the funds from Nelson's, Nelson's filed for bankruptcy.

Textron brought this action against Firstar claiming wrongful conversion. Both Textron and Firstar moved for summary judgment. Textron alleged that it had a valid PMSI in the proceeds, giving its security interest priority over Firstar's earlier-filed security agreement. *See* § 409.312(3), STATS. Firstar claimed that Textron did not have a valid PMSI, that Textron could not properly trace the proceeds, and that Firstar had priority in the proceeds because it took them in the ordinary course of business. The trial court granted Textron's motion and rejected Firstar's. Firstar appeals.

We review motions for summary judgment de novo, and employ the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). After examining the pleadings we examine the submissions of proof to determine whether the moving party has made a prima facie case for summary judgment under § 802.08(2), STATS. *Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473, 477 (1980). If the moving party has demonstrated its entitlement to the judgment and the opposing party has failed to introduce evidence which is sufficient to raise a disputed issue of material fact, the trial court should properly grant summary judgment to the moving party. *Id.*

Firstar's initial argument is that Textron failed to demonstrate a prima facie case for recovery because it did not sufficiently prove the existence of a PMSI in the boat sold by Nelson's. Firstar acknowledges that under the Uniform Commercial Code, Textron would continue to have a security interest in the proceeds of the inventory as long as Textron had an existing PMSI in the specific collateral sold. *See* § 409.306, STATS. Firstar also concedes that Textron met every requirement for perfecting its purchase money security agreement in the boat with one exception: Textron's alleged failure to show that it financed the specific boat in question.

This claim need not detain us long. Firstar acknowledges an affidavit in which Textron's Group Recovery Manager states that Nelson's purchased the boat in question with financing provided by Textron. Further, Textron supplied invoices and certificates of origin with respect to that collateral in which its name and Nelson's both are identified. This is sufficient proof to establish that Textron financed the specific collat-

eral. Because Firstar has failed to introduce any evidence demonstrating that a disputed issue of material fact exists with respect to the financing of the boat, Textron met its burden of establishing a PMSI in both the boat and the proceeds. *See* § 802.08(3), STATS. ("an adverse party may not rest upon the mere allegations or denials of the pleadings but the adverse party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue for trial").

Firstar next claims that Textron failed to meet its burden of tracing the sale proceeds of the inventory to the bank account. *See* § 409.306(2), STATS. (a security interest continues in identifiable proceeds). Firstar makes two distinct arguments. First, it claims that Nelson's commingling of the proceeds with other cash in its bank account automatically rendered those proceeds "lost." Firstar cites no precedent for this claim and relies on a single commentator's apparent conclusion that commingling is in itself sufficient to defeat a security claim to those proceeds. *See* 2 GRANT GILMORE, SECURITY INTERESTS IN PERSONAL PROPERTY § 27.4 (1965). We reject Professor Gilmore's view in this instance because it directly conflicts with Wisconsin law. In *Commercial Discount Corp. v. Milwaukee Western Bank*, 61 Wis. 2d 671, 683–84, 214 N.W.2d 33, 39 (1974), the Wisconsin Supreme Court clearly held that commingling funds in a bank account does not of itself defeat a security interest in proceeds.

Firstar also attempts to undermine Textron's ability to trace the proceeds to the bank account by pointing out flaws in Textron's submissions of proof. In support of its summary judgment motion Textron

offered a stipulation entered in Nelson's bankruptcy case, signed by the attorneys for both Nelson's and Textron, in which Nelson's stated that it had deposited the proceeds of the sale into its Firstar account. Firstar claims that this evidence should not be considered because it is inadmissible hearsay. This claim, however, was not raised before the trial court. We note that while such a stipulation may appear to meet the definitions of hearsay, the trial court might have considered the stipulation to have "circumstantial guarantees of trustworthiness" under § 908.03(24), STATS., sufficient to remove it from the hearsay exclusion. Because Firstar failed to allow the trial court the opportunity to consider this issue, we will not now consider it for the first time on appeal. *See Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140, 145–46 (1980).

■

Firstar's other evidentiary argument concerns the amount of Nelson's deposit into its bank account. Firstar refers us to the sales contract which in one part states the balance, "paid in full," as $25,018.40. Firstar claims there is no deposit into Nelson's account for that amount, although it admits that there is a deposit for $25,000. Apparently, Firstar infers that the deposit must have been from some other source because Nelson's received over $25,000 from the boat while only depositing an even $25,000. This is insufficient to demonstrate the existence of a disputed, material issue of fact. The amount of money stated on a sales contract is only marginally important to the real issue—the source of the money deposited into Nelson's checking account. Textron has offered unrefuted proof by way of the stipulation that Nelson's $25,000 deposit traced back to the sale of Textron's collateral. We also note that, regardless of the amount showing on the sales

contract, the sales receipt for the boat shows that $25,000 was received by check from the customer who purchased the boat. We therefore reject Firstar's arguments, and conclude that Textron sufficiently traced the proceeds of the sale of the boat.

Firstar's final argument is that it rightly took the proceeds free from Textron's security interest because it received a voluntary payment in the ordinary course of business. In support of this proposition Firstar cites to an official comment to U.C.C. § 9–306, which provides:

> Where cash proceeds are covered into the debtor's checking account and paid out in the operation of the debtor's business, recipients of the funds of course take free of any claim which the secured party may have in them as proceeds. What has been said relates to payments and transfers in ordinary course. The law of fraudulent conveyances would no doubt in appropriate cases support recovery of proceeds by a secured party from a transferee out of ordinary course or otherwise in collusion with the debtor to defraud the secured party.

U.C.C. 2–306, cmt. 2(c). Firstar fails to refer us to any Wisconsin law suggesting that this comment alone creates an exception to the Code's general priority rules. The official Code comment is "not automatically law," but rather is "persuasive authority" as to its interpretation. *See State v. Eugenio*, 210 Wis. 2d 348, 353, 565 N.W.2d 798, 801 (Ct. App. 1997). We do note, however, that several other jurisdictions have apparently accepted this argument, *see, e.g., J.I. Case Credit Corp. v. First Nat'l Bank*, 991 F.2d 1272 (7th Cir. 1993) (applying the comment under Indiana law), and in light of Textron's failure to raise this issue, for purposes of this case we will assume that the comment

589

alone can support an exception to the Code's general priority rules.

We believe that the Seventh Circuit Court of Appeals decision in *J.I. Case* is instructive on the applicability of comment 2(c), and note that both Textron and Firstar appear to agree with the decision. *J.I. Case* sought to define the language in comment 2(c) of "payments and transfers in the ordinary course." *Id.* at 1276. The seventh circuit ultimately defined that term as a payment "made in the operation of the debtor's business and [where] the payee did not know and was not reckless about whether the payment violated a third party's security interest." *Id.* at 1279. In arriving at this conclusion, the court adopted the first circuit's view that " 'good commercial reasons' " justified giving "ordinary course" a broad definition. *Id.* at 1277 (quoting *Harley-Davidson Motor Co. v. Bank of New England*, 897 F.2d 611, 622 (1st Cir. 1990)). Such a broad interpretation properly prevented courts from " 'too readily [imposing] liability upon those who receive funds from the debtor's ordinary bank account . . . [such as] ordinary suppliers of gas, electricity, tables, chairs, etc. . . .' " *Id.* (quoting *Harley-Davidson*, 897 F.2d at 622). Further, the seventh circuit believed that imposing liability too readily on banks could impede the free flow of credit, which it stated was also "essential to business." *Id.*

The seventh circuit also grounded its test in its belief that "the most important factor to consider is the payee's knowledge about whether the payment was made with money that rightfully belongs to another." *Id.* at 1277. Finally, the court noted that this definition was supported by the Code's definition of a "buyer in the ordinary course," which is one who buys "in good faith and without knowledge that the sale to him is in

violation of the ownership rights or security interest of a third party." *Id*. at 1277; *see also* § 401.201(9), STATS.

■

The trial court considered *J.I. Case* in arriving at its decision to grant Textron summary judgment. The trial court believed that Firstar failed to meet the test, however, because the transfer "was made essentially on the eve of bankruptcy after the bank itself called in the debtor and expressed some kind of concern." In arriving at this conclusion, the trial court was operating under an erroneous view of the law. As the *J.I. Case* test established, the method of payment is irrelevant as long as the payment was "made in the operation of the debtor's business" by a payee without knowledge and not reckless about whether the payment violated a third party's security interest. Firstar alleged, and Textron did not dispute, that Nelson's loan payment was "in the operation of the debtor's business."[1] We therefore remand this case with instructions that the trial court apply the test as established in *J.I. Case*: Did Firstar receive a payment in the operation of the Nelson's business, without either knowing or being reckless in knowing whether that payment violated a third party's security interest?

■

Finally, we address Textron's claim, accepted by the trial court, that Firstar's collection really

---

[1] The trial court could, however, conclude on remand that the unusual nature and timing of the payment established that Firstar was at least reckless with respect to whether the payment violated Textron's security interest. *See* RONALD A. ANDERSON, 1 UNIFORM COMMERCIAL CODE § 1–201:109 (3d ed. 1996) (irregularities in a transaction may support the conclusion that the purchaser had knowledge that would bar him or her from being a buyer in the ordinary course).

amounted to a set-off. As established in *Commercial Discount Corp.*, a bank's right to keep a set-off is defeated by any security interest in the same funds, whether or not the bank had knowledge that its set-off violated a security interest. *Commercial Bank*, 61 Wis. 2d at 682–83, 214 N.W.2d at 38–39. We do not agree, however, that Nelson's loan payment was a set-off. As Firstar notes, a set-off is the involuntary taking of funds from a debtor's account. Because no facts are alleged that would tend to show the loan payment to Firstar was involuntary, we reject this claim.

*By the Court.*—Judgment reversed and cause remanded with directions.