[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1015 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1016 
On May 24, 2002, Liberty National Life Insurance Company ("Liberty National") sued the University of Alabama Health Services Foundation, P.C., University of Alabama at Birmingham Hospital, and UAB Health System (hereinafter collectively referred to as "UAB"). Liberty National's complaint presented claims alleging "prima facie tort";[1] violation of Ala. Code 1975, § 22-21-7;[2] intentional interference with Liberty National's "contractual and/or business relationships" with its insureds; and a claim seeking a declaratory judgment under the Alabama Declaratory Judgment Act ("the Act"). Liberty National alleged that UAB's billing statements to its patients who are also Liberty National policyholders often contain charges for various services that exceed the amounts UAB has accepted or will accept as full payment for those services; thus, Liberty National claims that UAB causes it to pay its policyholders amounts in reimbursements for services performed by UAB that exceed what UAB accepts as full satisfaction of those services. Liberty National sought an injunction to prevent UAB from continuing its allegedly improper billing practice, an award of compensatory and punitive damages, and a judgment declaring that UAB's billing practices violated Ala. Code 1975, § 22-21-7.
UAB filed a motion to dismiss the action pursuant to Rule 12(b)(1), (6), (7), and Rule 19, Ala.R.Civ.P. In its motion UAB asserted that the "Board of Trustees of the University of Alabama for its Division, University Hospital" was the correct designation for the defendant designated in Liberty National's complaint as "University of Alabama at Birmingham Hospital." This defendant is referred to hereinafter as "UAB Hospital." UAB asserted lack of subject-matter jurisdiction arising from Liberty National's lack of standing to bring any of the claims except the claim alleging intentional interference with contractual and/or business relationships; failure to state a claim upon which relief could be granted as to the prima facie tort claim and the claim asserting a violation of § 22-21-7; failure to join policyholders as necessary parties; and UAB Hospital's immunity from Liberty National's claims against it by virtue of Ala. Const. 1901, Art. I, § 14. Liberty National responded and UAB then filed a reply brief in response to Liberty National's opposition. In that brief, UAB expanded its ground of failure to state a claim upon which relief could be granted to include the declaratory-judgment claim. On September 9, 2002, the trial court granted UAB's motion to dismiss the case, *Page 1017 
on the ground that the court lacked jurisdiction over the action because Liberty National lacked standing to bring it. Liberty National appealed.
On appeal, Liberty National argues that the trial court's ruling that it lacks standing was improper and that this Court cannot affirm the trial court's judgment on the basis of any of the other grounds contained in UAB's motion to dismiss.
 "The appropriate standard of review of a trial court's [ruling on] of a motion to dismiss is whether `when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [the pleader] to relief.' Nance v. Matthews, 622 So.2d 297, 299 (Ala. 1993); Raley v. Citibanc of Alabama/Andalusia, 474 So.2d 640, 641
(Ala. 1985). This Court does not consider whether the plaintiff will ultimately prevail, but only whether the plaintiff may possibly prevail. Nance, 622 So.2d at 299. A `dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.' Nance, 622 So.2d at 299; Garrett v. Hadden, 495 So.2d 616, 617 (Ala. 1986); Hill v. Kraft, Inc., 496 So.2d 768, 769
(Ala. 1986)."
Lyons v. River Road Constr., Inc., 858 So.2d 257, 260 (Ala. 2003).
The complaint states that since 1969, Liberty National has issued cancer insurance policies that pay policyholders amounts equal to their medical expenses for the treatment of cancer. These cancer policies are supplemental, as opposed to primary, insurance policies; Liberty National makes payments directly to the policyholders or their family members, and only "rarely, if ever," makes payments directly to health-care service providers. The cancer policies are intended to assist in paying medical bills or other expenses incurred by policyholders afflicted with cancer and to pay the expenses of cancer treatment, regardless of the presence of, and payments by, other insurance or other primary payment sources, such as Medicare. As Liberty National states in its brief to this Court:
 "It is thus inherent in the promises made in [Liberty National's] insurance that the patient, if he or she has other insurance (or Medicare or other coverage), will be covered more than once for the treatments he or she receives — once by payment to the hospital or doctor and once to the insured. . . ."
These cancer policies are renewable for the life of the policyholder; Liberty National cannot modify or eliminate any of the terms or conditions of the policies. However, Liberty National may, subject to regulatory limitations, increase the annual premiums. As Liberty National stated in its complaint, "[U]nder the terms of the Cancer Policies, Liberty National is obligated to pay Liberty National Insureds benefits on some policies of `expenses incurred' or, in other policies, the `actual charges by a hospital, physician or other provider' for a Covered Treatment of the Liberty National Insured. . . . [Liberty National] is not obligated to pay benefits `in excess of the usual and customary charges' for such treatment." Many of the cancer policies issued by Liberty National have no dollar limit on the amounts Liberty National may be required to pay for radiation treatment, chemotherapy, prescription chemotherapy drugs, and other out-of-hospital prescription drugs. Liberty National designates those policies as the "no dollar limit policies." The complaint states that at the end of the year 2001, *Page 1018 
Liberty National had approximately 78,000 no dollar limit policies in force.[3]
As a part of its billing practice, UAB used a price list it refers to as "Charge Master." UAB states that this price list "exhaustively compiles" its actual charges. It explained in its reply brief in the trial court that "[t]he Charge Master inventories the actual charges and ensures their universal application to every patient, irrespective of whether a third party payor may ultimately satisfy part or all of the charges." The "actual charges" thus derived are the amounts billed by UAB. However, as is common practice in the health-care industry, and as required by law in certain instances, UAB often accepts as payment in full an amount less than the actual total charge reflected on the billing statement generated using Charge Master. For example, pursuant to 42 C.F.R. § 412.42(a): "A hospital may not charge a beneficiary for any services for which payment is made by Medicare, even if the hospital's costs of furnishing services to that beneficiary are greater than the amount the hospital is paid under the prospective payment systems." The Medicare Provider Reimbursement Manual, Part I, Chapter 22, § 2203, states: "While the Medicare program cannot dictate to a provider what it charges or charge structure may be used, the program may determine whether or not the charges are allowable for use in apportioning costs under the program." (UAB's brief, p. 7.) Also, hospitals often enter into agreements with insurance companies pursuant to which the hospital agrees to accept a "reimbursed amount" that is less than the actual charge incurred by the policyholder.[4] As stated in UAB's reply brief in the trial court, unless UAB is statutorily or contractually limited to the amount it may accept as full payment for the health-care services it provides, it expects reimbursement for the "full amount of the actual charges."
Liberty National's complaint states that when UAB provides cancer treatment to a Liberty National policyholder, UAB issues a billing statement that some policyholders then present to Liberty National. That statement does not reflect the actual amount UAB can charge and collect for treatments if the policyholder also receives benefits from Medicare or from some other insurance company that has a special arrangement with UAB for reimbursing its charges. Rather, as noted, the statement reflects the charges an otherwise uninsured patient must pay, compiled using Charge Master, without regard to any limiting special program or contract. Thus, the Liberty National policyholder, just like all other patients, receives a statement showing amounts extracted using Charge Master, amounts that are not necessarily the amounts UAB has accepted or will accept as full payment of its services. The terms of Liberty National's cancer policies require that Liberty National pay the policyholder the full amount listed on the statement. As Liberty National states in its brief to this Court: "It is the practice of [Liberty National] to pay the insureds the amount billed by [UAB] even though the amounts are greatly inflated." Liberty National avers in its complaint that during the years 2000 and 2001, UAB's billing practice caused it to pay its cancer policyholders treated by UAB who also received Medicare benefits more than $276,094 in excess of what UAB accepted from Medicare as full payment for their cancer treatments. *Page 1019 
On May 4, 2002, Liberty National sent a letter notifying UAB of the alleged injury UAB's billing practice was causing and demanding that UAB "cease and desist from engaging in their billing practice." UAB has not changed its billing practice. The trial court's order granting UAB's motion to dismiss states, in part:
 "Liberty [National] claims that [UAB is] issuing statements to [its] patients, upon discharge, that are not the actual charges or expenses incurred. That is, [UAB] issue[s] to [its] patients statements pursuant to Section 22-21-7, Code of Alabama [1975], which do not reflect the actual amounts received by [UAB] when such patients have either governmental or private insurance. Some of these individuals are also policyholders of [Liberty National's] cancer policies that provide for payment of `actual charges' or the amount that Liberty [National] is required to pay its policy-holder. Stated another way[,] Liberty [National] wants [UAB] to state the amount received by [UAB] as the actual charges. This would require different stated amounts for patient[s] with no government or private insurance to cover their medical costs. [Liberty National's] subject policies are between it and its policyholders. Payment is made directly to the policyholder. Liberty [National] has no contractual agreement for such policies with [UAB].
 "[UAB] filed a motion to dismiss on July 3, 2002. The basis of such motion was as follows: (1) lack of subject matter jurisdiction as to UAB hospital; (2) Failure to join Liberty [National] policyholders as necessary parties; (3) Liberty [National] does not have standing; (4) Alabama law does not recognize a cause of action for prima facie torts; and (5) Liberty [National] cannot maintain a private cause of action for violation of Section 22-21-7, Code of Alabama.
 "The Court has considered the submissions of the parties and finds that as a matter of law, this Court does not have jurisdiction of this matter since [Liberty National] has no standing to bring this cause of action. Pursuant to Rule 12, [Ala. R. Civ. P.], this case is dismissed. Costs are taxed against [Liberty National]. State v. Property at 2018 Rainbow Drive, Known as Oasis[,] 740 So.2d 1025
[(Ala. 1999),] and Liberty National Life Insurance Co. v. Allen[,] 699 So.2d 138 [(Ala. 1997)]."
Liberty National contends that the trial court erred in holding that it lacked standing to bring this action.
 "Standing, like jurisdiction, is necessary for any valid legal action. To say that a person has standing is to say that that person is a proper party to bring the action. To be a proper party, the person must have a real, tangible legal interest in the subject matter of the lawsuit."
Doremus v. Business Council of Alabama Workers' CompensationSelf-Insurers Fund, 686 So.2d 252, 253 (Ala. 1996).
 "Standing . . . turns on `whether the party has been injured in fact and whether the injury is to a legally protected right.' Romer v. Board of County Comm'rs of the County of Pueblo, 956 P.2d 566, 581
(Colo. 1998) (Kourlis, J., dissenting). . . . See also NAACP v. Town of East Haven, 892 F.Supp. 46
(D.Conn. 1995). `One has standing to bring his complaint into court "if his stake in the resolution of that complaint assumes the proportions necessary to ensure that he will vigorously present his case."' Smith v. Potts, 293 Ala. 419, 422, 304 So.2d 578, 580 (1974). . . ."
State v. 2018 Rainbow Drive, 740 So.2d 1025, 1027-28 (Ala. 1999) (emphasis omitted). With respect to the issue of standing *Page 1020 
and the standard of review discussed in Lyons, supra, we must consider whether, viewing the allegations of the complaint most strongly in Liberty National's favor, Liberty National could prove any set of circumstances that would show that UAB has injured Liberty National's legally protected rights. Given our subsequent disposition of Liberty National's claim premised on an alleged violation of § 22-21-7, Ala. Code 1975, we affirm the trial judge's judgment insofar as it found that Liberty National lacked standing to bring that claim.
However, given the broad standard used to determine standing, we cannot conclude that there is no possible situation in which Liberty National might show the requisite injury as to its other claims. See by way of analogy and example, the elements required for proof of the tort of intentional interference with business relations in Folmar Associates LLP v. Holberg, 776 So.2d 112,115 (Ala. 2000) ("`(1) The existence of a contract or business relation; (2) Defendant's knowledge of the contract or business relation; (3) Intentional interference by the defendant with the contract or business relation; (4) Absence of justification for the defendant's interference; and (5) Damage to the plaintiff as a result of defendant's interference.'" (quoting Gross v. LowderRealty Better Homes Gardens, 494 So.2d 590 (Ala. 1986))). As noted, UAB does not raise a standing issue as to Liberty National's claim alleging intentional interference with contractual or business relationships. Accordingly, we will not affirm the trial court's dismissal of the entire complaint upon a rationale that Liberty National lacked standing to bring any aspect of it.
Nonetheless, this Court will affirm the trial court on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court. Ex parte Ryals, 773 So.2d 1011 (Ala. 2000), citingEx parte Wiginton, 743 So.2d 1071 (Ala. 1999), and Smith v.Equifax Servs., Inc., 537 So.2d 463 (Ala. 1988). This rule fails in application only where due-process constraints require some notice at the trial level, which was omitted, of the basis that would otherwise support an affirmance, such as when a totally omitted affirmative defense might, if available for consideration, suffice to affirm a judgment, Ameriquest MortgageCo. v. Bentley, 851 So.2d 458 (Ala. 2002), or where a summary-judgment movant has not asserted before the trial court a failure of the nonmovant's evidence on an element of a claim or defense and therefore has not shifted the burden of producing substantial evidence in support of that element, Rector v.Better Houses, Inc., 820 So.2d 75, 80 (Ala. 2001) (quotingCelotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548,91 L.Ed.2d 265 (1986), and Kennedy v. Western Sizzlin Corp.,857 So.2d 71 (Ala. 2003)).
Liberty National contends that this Court cannot affirm the trial court's judgment based upon any of the other grounds of UAB's motion to dismiss. Those other grounds, as argued by UAB in its brief to this Court, are that Liberty National policyholders are "necessary parties" who must be joined in the action pursuant to Rule 19, Ala.R.Civ.P.; that Liberty National has failed to state a claim upon which relief can be granted as to its respective claims of prima facie tort and intentional interference with contractual and/or business relationships; that there has been no violation of Ala. Code § 22-21-7; and that UAB is protected by the doctrine of sovereign immunity.
Accordingly, we consider those arguments, starting with whether the trial court's judgment is sustainable by application *Page 1021 
of the joinder requirements of Rule 19, Ala.R.Civ.P.
Rule 19 states, in part:
 "(a) Persons to be Joined if Feasible. A person who is subject to jurisdiction of the court shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. . . .
 "(b) Determination by Court Whenever Joinder Not Feasible. If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."
We have discussed the application of Rule 19 as follows:
 "`Rule 19, Ala.R.Civ.P., provides for joinder of persons needed for just adjudication. Its purposes include the promotion of judicial efficiency and the final determination of litigation by including all parties directly interested in the controversy. Hooper v. Huey, 293 Ala. 63, 69, 300 So.2d 100, 105
(1974), overruled on other grounds, Bardin v. Jones, 371 So.2d 23 (Ala. 1979).'"
Dawkins v. Walker, 794 So.2d 333, 336 (Ala. 2001) (quotingByrd Cos. v. Smith, 591 So.2d 844, 846 (Ala. 1991)).
 "Rule 19, [Ala.]R.Civ.P., provides a two-step process for the trial court to follow in determining whether a party is necessary or indispensable. Ross v. Luton, 456 So.2d 249, 256 (Ala. 1984), citing Note, Rule 19 in Alabama, 33 Ala.L.Rev. 439, 446 (1982). First, the court must determine whether the absentee is one who should be joined if feasible under subdivision (a). If the court determines that the absentee should be joined but cannot be made a party, the provisions of (b) are used to determine whether an action can proceed in the absence of such a person. Loving v. Wilson, 494 So.2d 68 (Ala. 1986); Ross v. Luton, 456 So.2d 249 (Ala. 1984). It is the plaintiff's duty under this rule to join as a party anyone required to be joined. J.C. Jacobs Banking Co. v. Campbell, 406 So.2d 834 (Ala. 1981).
 "`If such persons are not joined, the plaintiff must, under subsection (c) of Rule 19, [Ala.R.Civ.P.], state their names and the reasons why they are not joined. If there is a failure to join a person needed for just adjudication by a litigant then under subsection (a) of Rule 19, the trial court shall order that he be made a party.' *Page 1022 
 "406 So.2d at 849-50. (Emphasis added [in Holland].)
 "We note that the interest to be protected must be a legally protected interest, not just a financial interest. Ross, supra; see Realty Growth Investors v. Commercial Indus. Bank, 370 So.2d 297
(Ala.Civ.App. 1979), cert. denied, 370 So.2d 306
(Ala. 1979). There is no prescribed formula for determining whether a party is a necessary one or an indispensable one. This question is to be decided in the context of each particular case. J.R. McClenney Son v. Reimer, 435 So.2d 50 (Ala. 1983), citing Provident Tradesmens Bank Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968)."
Holland v. City of Alabaster, 566 So.2d 224, 226-27 (Ala. 1990) (emphasis omitted). "The absence of a necessary and indispensable party necessitates the dismissal of the cause without prejudice or a reversal with directions to allow the cause to stand over for amendment." J.C. Jacobs Banking Co. v. Campbell,406 So.2d 834, 850-51 (Ala. 1981). See also Stamps v. Jefferson County Bd.of Educ., 642 So.2d 941, 945 (Ala. 1994) (Almon, J., concurring in part and dissenting in part).
 "`[O]n a motion under Rule 12(b)(7), the court initially will determine if the absentee should be joined as a party in accordance with the criteria set forth in Rule 19(a). If it decides in the affirmative, the court will order him brought into the action. When the absentee cannot be joined, the court must then determine, by analyzing the factors described in Rule 19(b) whether to proceed without him or to dismiss the action.'"
Britnell v. Alabama State Bd. of Educ., 374 So.2d 282, 285
(Ala. 1979), (quoting 7 C. Wright A. Miller M. Kane, FederalPractice and Procedure: Civil § 1609, Rule 19). Thus, a critical question is whether the Liberty National policyholders who have primary insurance coverage through Medicare or some other source entitled by law or contract to fully satisfy UAB's actual charges by payment of an amount less than those actual charges are necessary parties to Liberty National's action.
Liberty National entered into contracts with its policyholders pursuant to which it agreed that it would pay them, depending on the particular policy, either the "expenses incurred" or the "actual charges" that arose from covered cancer treatments. UAB contends that the relief Liberty National is seeking will have the direct effect of reducing the amounts Liberty National is contractually obligated to pay its policyholders. Liberty National argues that the "actual charges" UAB generates using Charge Master are not the "expenses incurred" or the "actual charges" of the health-care services UAB provides to patients who have Medicare or some other primary insurance coverage. Clearly, Liberty National seeks to reduce the amount it has to pay its policyholders who are covered by those forms of primary insurance for health-care services provided by UAB, to the amount UAB accepts as full payment for those services. If Liberty National is successful in that regard, policyholders will experience a reduction in the amount of benefits now payable to them for cancer treatments, to whatever amount UAB accepts as full payment.
Liberty National contends that the interests of those policyholders are "merely financial" rather than legally protected, and, therefore, that those policyholders are not necessary parties to this action. In Ross v. Luton,456 So.2d 249, 256 (Ala. 1984), this Court quoted the following statement:
 "`The "interest relating to the subject matter of the action" that makes an *Page 1023 
absent person a party needed for just adjudication must be a legally protected interest, not merely a financial interest or interest of convenience.' 3A J. Moore J. Lucas, Moore's Federal Practice § 19.07-1[2] at 19-129 (2d. ed. 1982); Realty Growth Investors v. Commercial Industrial Bank of Memphis, Tennessee, 370 So.2d 297, 304 (Ala.Civ.App.), cert. denied, 370 So.2d 306 (Ala. 1979)."
In Ross, a landowner, Ross, entered into a contract to provide water from a well on his land to Smiths Water Authority. The withdrawal of water from Ross's well depleted the surrounding water table to an extent that neighboring landowners could not obtain water from their wells, and various landowners sued Ross. After suffering an adverse judgment, Ross appealed, arguing, among other things, that the trial court had erred in not granting his motion seeking to join Smiths Water Authority and the City of Phenix City as indispensable parties under Rule 19, Ala.R.Civ.P. This Court analyzed that issue as follows:
 "Phenix City, as the operator of a competing utility system, has merely a financial interest relating to the subject matter of this case and is not a party that should have been joined under Rule 19(a). Smiths, by entering into a contract to purchase water from Ross, has a legally protected interest relating to the subject matter of this case and is so situated that the disposition of this case in its absence may as a practical matter impair or impede its ability to protect that interest. Smiths is a party that should have been joined if feasible under Rule 19(a), so we must proceed with the analysis required by Rule 19 and determine whether Smiths is an indispensable party under Rule 19(b)."
456 So.2d at 256-57.
Liberty National policyholders do have not merely a secondary financial interest in the manner in which UAB bills patients for cancer treatments and the manner in which Liberty National pays those bills, but a financial interest that arises from their contracts with Liberty National. Under those contracts the policyholders agree to pay premiums to Liberty National and, in the event a policyholder is diagnosed with cancer, Liberty National agrees to pay the policyholder either the "expenses incurred" by the policyholder for the cancer treatment or the "actual charges" charged by the health-care provider.
As it did in Ross, this Court has recognized in several other cases that an interest created by a contract is a legally protected interest. See BellSouth Mobility, Inc. v. Cellulink,Inc., 814 So.2d 203 (Ala. 2001), citing Electronics Store, Inc.v. Cellco P'ship, 127 Md.App. 385, 732 A.2d 980, 981 (1999). See also Strojnik v. General Ins. Co. of America, 201 Ariz. 430,434, 36 P.3d 1200, 1204 (Ct.App. 2001) (an interest created by a contract is a legally protected interest). We therefore conclude that the subject policyholders have a legally protected interest that will be affected by the outcome of Liberty National's asserted claims. Additionally, if those policyholders are not joined in this action and are not bound by its outcome, the issue whether Liberty National may reduce the amount of cancer benefits it provides those policyholders under its cancer policies, in the event of an outcome favorable to Liberty National, could be subject to relitigation by a policyholder, potentially resulting in an outcome inconsistent with the outcome of this case. Bolesv. Autery, 554 So.2d 959 (Ala. 1989) (county deemed indispensable party to an action brought by landowners against purchasers of nearby property seeking a determination of whether a road being used by the purchasers was *Page 1024 
private and not public, because results of later litigation on the issue might be inconsistent with results of that initial litigation). Accordingly, we conclude that the group of Liberty National policyholders composed of persons who have primary health insurance coverage of the sort discussed are necessary parties within the meaning of Rule 19(a), Ala.R.Civ.P.[5]
We must further consider, however, whether the joinder of this group of policyholders is feasible. In order to make a determination as to the feasibility of joinder under Rule 19, Ala.R.Civ.P., a court must consider whether the absentee party is subject to service of process, whether the absentee party's joinder will deprive the trial court of subject-matter jurisdiction, or whether the absentee party makes a valid objection to the court's venue after joinder. See 3 Charles Alan Wright, Arthur R. Miller Mary Kay Kane, Federal Practice andProcedure: Civil § 1604 (2001). See also Tick v. Cohen,787 F.2d 1490, 1493-94 (11th Cir. 1986) ("Limitations on service of process, subject matter jurisdiction, and venue . . . may bar joinder in some cases."); Potts v. Gordon, 34 Colo.App. 128,134, 525 P.2d 500, 503-04 (1974), citing C. Wright A. Miller,Federal Practice and Procedure § 1604 ("Joinder is `feasible' under [Rule 19, Colo.R.Civ.P., substantially similar to Rule 19, Ala.R.Civ.P] as long as the absentee is subject to service of process; his joinder will not deprive the court of jurisdiction; and he has no valid objection to venue of the court."). In this case, the record is devoid of information sufficient to inform us as to the feasibility of joinder of the affected Liberty National policyholders. Accordingly, the trial court would have to conduct further proceedings to develop that information and make a finding as to the feasibility of joinder, before the issue would be ripe for appellate review.
Liberty National also contends that this Court cannot affirm the trial court's judgment based upon UAB's argument that Alabama law does not recognize a cause of action for prima facie tort. Liberty National describes its theory of prima facie tort as a tort theory designed to "ensure that no legitimately aggrieved party is denied justice because, by happenstance, its claim does not fall neatly within a traditionally recognized category of tort liability." (Liberty National's brief, p. 44.) Liberty National quotes the following formulation of the prima facie tort from the Restatement (Second) of Torts:"One who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances. This liability may be imposed although the actor's conduct does not come within a traditional category of tort liability." Restatement (Second) ofTorts § 870 (1977). Liberty National asserts that UAB's billing practice satisfies all of the characteristics of a prima facie tort of the sort recognized by a number of courts in other jurisdictions, as well as by the Restatement (Second) of Torts.
Liberty National also argues, relying on our decision inPolytec, Inc. v. Utah Foam Products, *Page 1025 439 So.2d 683 (Ala. 1983), that this Court, like the trial court, "need not and should not" address UAB's argument opposing its prima facie tort claim and "need not and should not" determine whether a cause of action for prima facie tort should be recognized under Alabama law.
In Polytec, the defendant appealed from the dismissal of two of the three counts in its counterclaim, and the plaintiff appealed from the refusal of the trial court to dismiss the third count. This Court declined to address the prima facie tort theory argued by the defendant/counterclaimant as one of several bases for overturning the dismissal of one count of the counterclaim because that count stated the cognizable tort of "wrongful interference with business." Any right to recover under a prima facie tort theory was deemed to "coincide more or less" with the business-interference theory. 439 So.2d at 689. This Court concluded that a discussion of whether a cause of action existed for prima facie tort would be "premature and unnecessary" because such a cause of action was not supported by precedent in this State and the business-interference claim was supported by "ample precedent." 439 So.2d at 690.
Liberty National likewise asserts a claim alleging interference with business, which UAB never moved to dismiss. In light of our holding in Polytec, the presence in the case of the alternative claim alleging business interference, and the early stage of this case, we do not determine whether a claim for prima facie tort should be a recognized cause of action in this State under the claims and factual underpinnings involved here.
Liberty National argues that the trial court's order of dismissal cannot be affirmed on the basis of UAB's contention relating to Ala. Code 1975, § 22-21-7. In its motion to dismiss, UAB asserted that § 22-21-7 neither created nor implied a private cause of action. "`One claiming a private right of action within a statutory scheme must show clear and convincing evidence of legislative intent to impose civil liability for a violation of the statute.' American Auto. Ins. Co. v. McDonald,812 So.2d 309, 311 (Ala. 2001). C.B. v. Bobo, 659 So.2d 98 (Ala. 1995)."Blockbuster, Inc. v. White, 819 So.2d 43, 44 (Ala. 2001). Section 22-21-7 states, in pertinent part:
 "(a) For the purposes of this section, the term `hospital' shall mean any hospital in which human patients are given medical care. It shall include all emergency rooms or outpatient facilities connected thereto.
 "(b) Within 10 days following discharge or release from confinement in a hospital or nursing home,[6] or within 10 days after the earliest date at which the expense from the confinement or service may be determined, which in the case of long-term confinement may be the monthly charge, the hospital or nursing home providing the service shall submit to the patient, or to his survivor or legal guardian as may be appropriate, upon written request, an itemized statement detailing in language comprehensible to an ordinary layman the specific nature of charges or expenses incurred by the patient, which in the initial billing shall contain a statement of specific services received and expenses incurred for each such item of service, enumerating in detail the constituent components of the services received within each department of the hospital or nursing home and including unit-price data on rates charged by the hospital or nursing *Page 1026 
home. This statement shall not include charges of hospital based or nursing home based physicians if billed separately.
". . . .
 "(e) The Attorney General shall maintain an action in the name of the state for an injunction to restrain any person, firm, association or corporation from operating, conducting or managing a hospital in violation of the provisions of this section if and when violations are brought to his attention by an individual after a due process of law procedure has been followed.
". . . .
 "(g) Hospitals can print information on the statement as to the procedure that must be followed by insurance companies relating to the payment of claims made by persons in possession of the statement referred to in subsection (b) of this section. An addendum which prohibits insurance companies from paying to the patient any amounts due the hospital by the patient is acceptable. Any insurance company making a payment to the patient without positive validation from appropriate hospital officials shall be held liable for such payment to the hospital and shall be guilty of a misdemeanor."
The statute contains no language suggesting that the Legislature intended to create a private cause of action for any violation of those provisions. The Legislature expressly reserved to the attorney general a cause of action for such violations, and Liberty National has presented no evidence to support the idea that § 22-21-7 creates or implies a private cause of action.American Auto Ins. Co., supra.[7] Accordingly, we conclude that Liberty National is not a party entitled to bring a private action for an alleged breach of § 22-21-7.
Liberty National further asserts that UAB's argument that UAB Hospital is protected by the doctrine of sovereign immunity does not provide a sufficient basis on which to affirm the trial court.
 "The State is immune from suit, and its immunity cannot be waived by the Legislature or by any other State authority. Druid City Hosp. Bd. v. Epperson, 378 So.2d 696 (Ala. 1979). Recently, this Court restated long-settled principles concerning the immunity of the State of Alabama from suit and the precedent, firmly supported by the doctrine of stare decisis, which holds that an action contrary to the State's immunity is an action over which the courts of this State lack subject-matter jurisdiction. In Alabama State Docks Terminal Ry. v. Lyles, 797 So.2d 432 (Ala. 2001), this Court held:
 "`The long-standing legal principle of state sovereign immunity is written into Alabama's Constitution. "Article I, § 14, Alabama Constitution of 1901, provides that `the State of Alabama shall never be made a defendant in any court of law or equity.' Under this provision, the State and its agencies have absolute immunity from suit in any court." Ex parte Franklin County Dep't of Human Res., 674 So.2d 1277, 1279 (Ala. 1996) (citing Barnes v. Dale, 530 So.2d 770 (Ala. 1988)). Neither the State nor the Alabama State Port Authority has the power to waive that immunity: *Page 1027 
 "`"It is familiar law in this state that § 14 `wholly withdraws from the Legislature, or any other state authority, the power to give consent to a suit against the state.' Dunn Construction Co. v. State Board of Adjustment, 234 Ala. 372, 376, 175 So. 383, 386 (1937). This Court has recognized the `"almost invincible" "wall" of the state's immunity, as established "by the people through their Constitution."' Jones v. Alabama State Docks, 443 So.2d [902] at 905 [(Ala. 1983)], quoting Hutchinson v. Board of Trustees of University of Alabama, 288 Ala. 20, 24, 256 So.2d 281, 284 (1971). Therefore, it is clear that neither the [L]egislature nor the State Docks had the power to waive, either expressly or impliedly, the state's immunity under § 14 and thereby consent to a damages action against the state."
 "`Alabama State Docks v. Saxon, 631 So.2d 943, 946
(Ala. 1994). (See Ex parte Cranman, 792 So.2d 392
(Ala. 2000), for history and background regarding the development of state-agent immunity.) Article I, § 14, of the Alabama Constitution of 1901 thus removes subject-matter jurisdiction from the courts when an action is determined to be one against the State.
 "`"We have held that the circuit court is without jurisdiction to entertain a suit against the State because of Sec. 14 of the Constitution. J.R. Raible Co. v. State Tax Commission, 239 Ala. 41, 194 So. 560 [(1939)]. And this court has said that it will take notice of the question of jurisdiction at any time or even ex mero motu. Horn v. Dunn Brothers, Inc., 262 Ala. 404, 79 So.2d 11 [(1955)]; Scott v. Alabama State Bridge Corporation, 233 Ala. 12, 169 So. 273 [(1936)]. Therefore, it appears that a trial court or an appellate court should, at any stage of the proceedings, dismiss a suit when it becomes convinced that it is a suit against the State and contrary to Sec. 14 of the Constitution."
 "`Aland v. Graham, 287 Ala. 226, 229, 250 So.2d 677, 678 (1971). This constitutionally guaranteed principle of sovereign immunity, acting as a jurisdictional bar, precludes a court from exercising subject-matter jurisdiction. Without jurisdiction, a court has no power to act and must dismiss the action. "`The question of jurisdiction is always fundamental, and if there is an absence of jurisdiction over either the person, or the subject matter, a court has no power to act, and jurisdiction over the subject matter cannot be created by waiver or consent.'" Mobile Gulf R.R. v. Crocker, 455 So.2d 829, 831 (Ala. 1984) (quoting Norton v. Liddell, 280 Ala. 353, 356, 194 So.2d 514, 517
(1967)). If an Alabama court has jurisdiction to hear Lyles's action, it must come through some abrogation of the State's immunity.'
"797 So.2d at 434-35."
Larkins v. Department of Mental Health Mental Retardation,806 So.2d 358, 363-64 (Ala. 2001).
Liberty National's complaint describes "University of Alabama at Birmingham" as "an affiliate of the University of Alabama" and UAB Hospital as "a division (and/or component) of the University of Alabama at Birmingham." As noted earlier, UAB represents that UAB Hospital is properly designated only as the "Board of Trustees of the University of Alabama for its Division, University Hospital." The University of Alabama is a State *Page 1028 
university. "This Court has held that the operation of a hospital by a state university falls within the realm of sovereign immunity. Hutchinson v. Board of Trustees of University ofAlabama, 288 Ala. 20, 24, 256 So.2d 281, 284 (1971)." Sarradettv. University of South Alabama Med. Ctr., 484 So.2d 426, 426
(Ala. 1986). Therefore, UAB Hospital is protected by the doctrine of sovereign immunity from Liberty National's claims against it.[8]
Although UAB asserts a sovereign-immunity barrier only on behalf of UAB Hospital, because subject-matter jurisdiction is implicated by that doctrine, Ex parte Alabama Dep't of MentalHealth Retardation, 837 So.2d 808, 811 (Ala. 2002) (sovereign immunity is a jurisdictional bar that precludes a court from exercising subject-matter jurisdiction), we must consider whether the UAB Health Services Foundation and UAB Health System enjoy that immunity. "`The question of jurisdiction is always fundamental, and if there is an absence of jurisdiction over the person, or the subject matter, a court has no power to act. . . .'" Mobile Gulf R.R. v. Crocker, 455 So.2d 829,831 (Ala. 1984) (quoting Norton v. Liddell, 280 Ala. 353, 356,194 So.2d 514, 517 (1967), in turn citing Rinehart v. RelianceLife Ins. Co. of Georgia, 272 Ala. 93, 128 So.2d 503 (1961)). See also Koppers C. v. Gulf Welding Constr. Inc., 285 Ala. 331,231 So.2d 896 (1970), and B.F. Goodrich Co. v. Parker,282 Ala. 151, 209 So.2d 647 (1967). "`[I]t is the duty of an appellate court to consider the lack of subject matter jurisdiction exmero motu.'" Thompson v. Board of Pardons Paroles,806 So.2d 374, 375 (Ala. 2001), quoting Ex parte Smith, 438 So.2d 766,768 (Ala. 1983). The Health Services Foundation is a nonprofit, independent professional corporation that, in part, attends to the billing for UAB Hospital. See University of Alabama HealthServs. Found., P.C. v. Bush, 638 So.2d 794, 798 (Ala. 1994), andWendy's Int'l, Inc. v. City of Birmingham, 868 F.2d 433, 434 (11th Cir. 1989). The complaint, the parties submissions to the trial court, and the briefs submitted to this Court do not state what type of entity UAB Health System is or the purpose it serves. Accordingly, we conclude that because the Health Services Foundation and the UAB Health System are entities separate and distinct from UAB Hospital and have not been shown to qualify for sovereign immunity, they are not protected by that doctrine.
In summation, we conclude that under the facts and arguments presented there could not exist a possible situation in which Liberty National might show an injury to a legally protected right sufficient to provide the necessary standing to bring its claims, other than its claims dependent on a private cause of action for a violation of § 22-21-7, Ala. Code 1975. We also conclude, however, that § 22-21-7 neither creates nor implies a private cause of action. We conclude that resolution of the issue *Page 1029 
whether this Court should recognize a cause of action for prima facie tort would be premature and unnecessary. We determine that Liberty National policyholders within the stated group are "necessary parties" to this action and it is for the trial court to determine whether their joinder will be feasible pursuant to Rule 19 Ala.R.Civ.P. We conclude that UAB Hospital is protected by the doctrine of sovereign immunity from Liberty National's claims against it but that the Health Services Foundation and the UAB Health System are not so protected.
For the forgoing reasons, the judgment of the trial court is affirmed in part and reversed in part and the case remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOUSTON, LYONS, BROWN, JOHNSTONE, WOODALL, and STUART, JJ., concur.
[1] A "prima facie tort" is "[a]n unjustified, intentional infliction of harm on another person, resulting in damages, by one or more acts that would otherwise be lawful." Black's LawDictionary 1497 (7th ed. 1999).
[2] Section 22-21-7 lists a variety of general billing requirements applicable to hospitals and other health-care facilities.
[3] The record does not reveal the number of cancer policies Liberty National had outstanding that were not no dollar limit policies.
[4] Liberty National and UAB have not entered into such an agreement.
[5] Although we base our determination upon the conclusion that Liberty National's policyholders who are directly financially affected by its claims are necessary parties under Rule 19, we note that Liberty National suggests that all of its policyholders might be necessary parties. That is, Liberty National states in its complaint that as a result of UAB's billing practice, Liberty National is forced to increase the premiums paid for existing cancer policies by all policyholders, which often leads to some policyholders allowing their policies to lapse, thereby causing them to forgo any potential benefit from the premiums they have previously paid.
[6] UAB asserted in its motion to dismiss that neither the UAB Health Services Foundation nor the UAB Health System could be designated a hospital or a nursing home.
[7] Liberty National also presents a negligence-per-se argument on the basis that the class § 22-21-7 was enacted to protect includes health insurers. However, because we have concluded that that statute does not create or imply a private cause of action, we need not address that assertion.
[8] As to UAB's sovereign-immunity argument, Liberty National asserts that such immunity does not protect the State from the following, all of which Liberty National contends it is seeking as relief from this Court: (1) "[a]ctions brought to compel State officials to perform their legal duties"; (2) "[a]ctions to compel state officials to perform ministerial acts"; or (3) "[a]ctions brought under the Declaratory Judgments Act, . . . seeking construction of a statute and how it should be applied in a given situation." Patterson v. Gladwin Corp., 835 So.2d 137,142 (Ala. 2002). Liberty National states that it seeks to compel UAB to perform ministerial acts, which "constitute `legal duties'" to be truthful in compliance with § 22-21-7. Additionally, the declaratory relief Liberty National seeks is solely a construction of § 22-21-7 and a determination of how it should be applied in this case. Because we have concluded that §22-21-7 neither creates nor implies a private cause of action, the exceptions to the doctrine of sovereign immunity do not come into play.