Rel: May 15, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

_____

### CL-2025-0973, CL-2025-0974, and CL-2025-0975

_____

### J.L.

### v.

### A.L. and B.L.

### Appeals from Jefferson Juvenile Court
### (JU-20-595.03, JU-20-596.03, and JU-21-528.02)

MOORE, Presiding Judge.

In these consolidated appeals, J.L. ("the father") appeals from three separate judgments entered by the Jefferson Juvenile Court ("the juvenile court") denying his petition to modify the custody of his three children -- D.L., who was born on May 29, 2027; M.L., who was born on

CL-2025-0973; CL-2025-0974; and CL-2025-0975

December 27, 2018; and L.L., who was born on April 30, 2021. We reverse the judgments and remand the cases to the juvenile court.

Background

On February 11, 2025, the father filed a petition in case numbers JU-20-595.03, JU-20-596.03, and JU-21-528.02, in which he asserted, among other things, that the juvenile court had entered judgments on March 14, 2022 ("the 2022 judgments"), awarding custody of D.L., M.L., and L.L. ("the children") to their maternal aunt, B.L. ("the maternal aunt"). Although copies of the 2022 judgments are not included in the record on appeal, testimony from the father and the maternal aunt clarified that, in the 2022 judgments, the juvenile court awarded custody of the children to the maternal aunt and awarded the father and A.L. ("the mother") visitation with the children for two hours twice each month, with said visitations to be supervised by the maternal aunt or her designee. The father's testimony indicates that, to exercise their visitation with the children, the mother and the father were required to separately contact the maternal aunt 48 hours in advance to schedule visitation and to confirm their attendance and that, should they fail to do so, their visits would be deemed forfeited.

In his February 11, 2025, petition, the father asserted, among other things, that there had been a material change of circumstances; that the father had not seen the children between August 24, 2024, and January 12, 2025; that the maternal aunt was "actively denying the father his court-ordered visitation" in violation of the 2022 judgments; and that the father had secured employment and had addressed his substance-abuse issues. He asserted that the children's safety and well-being would be ensured by awarding him sole legal and physical custody and that it would be in the children's best interest to place them in the father's custody, care, and control. In addition to a modification of custody, the father sought a finding of contempt against the maternal aunt "for her noncompliance [with the 2022 judgments] by actively denying the father visitation" and an award of child support from the mother.

On February 12, 2025, the juvenile court entered a separate order in each action appointing a guardian ad litem for the children and scheduling a preliminary hearing for May 6, 2025. On May 7, 2025, the juvenile court entered a separate but identical order in each action in which it stated that, at that time, "the mother [and the maternal aunt] have not been served. Case is reset for [the father] to serve necessary

parties." The juvenile court reset the hearing in all three actions for July 29, 2025. On July 17, 2025, the maternal aunt filed in all three actions an answer to the father's petition. On July 30, 2025, the juvenile court entered a separate but identical order in each action that states: "[The m]other has not been served. No agreement can be reached. [The Father] to continue efforts at serving [the] mother. Case is set for trial [on October] 14, 2025 [at] 8:30. This is specially set and will not be continued. All prior orders remain in effect." On August 20, 2025, the maternal aunt filed in each action a motion to dismiss the father's petition based on the doctrine of unclean hands.

On October 14, 2025, the juvenile court presided over a bench trial. On that same date, the juvenile court entered in each action a separate, but otherwise identical, judgment that provides, in pertinent part:

> "The Court would note that the mother has not been served though many attempts were made to secure service and those attempts failed. The Court elected to go forward on [the] father's petition while giving thought and consideration to the mother's rights and court order from the past. The Court is confident that the outcome of this order will not affect any of those rights.
>
> "... [B]efore the trial began, the father's attorneys clarified that because of confusion in understanding [the 2022 judgments] they would not be pursuing any contempt against

4

the [maternal aunt] but would only be pursuing to modify custody."

The juvenile court proceeded to deny the father's request to modify the children's custody, but it modified the 2022 judgments to award the father specified unsupervised daytime visitation. The juvenile court noted that the "modification of [the] father's visitation does not interfere or disrupt [the] mother's prior orders of visitation and that same order shall remain in full force and effect as it applies to her visitation if she desires to exercise it." It denied the maternal aunt's motion to dismiss and stated: "Case is Closed."

On October 23, 2025, the father filed in all three actions a postjudgment motion in which he requested that the juvenile court make specific factual findings in support of its judgments and alter or amend its judgments to award him custody of the children. On October 28, 2025, the juvenile court entered a separate, but otherwise identical, order in each action in which it denied the father's postjudgment motion insofar as it sought an award of custody of the children but granted the father's request for specific findings of fact. On November 11, 2025, the father filed a separate notice of appeal in each action, naming as appellees the

mother and the maternal aunt; this court consolidated the father's appeals ex mero motu.

On March 19, 2026, this court entered an order directing the parties to file letter briefs addressing whether the mother was a necessary and indispensable party to the proceedings, see Rule 19, Ala. R. Civ. P.; whether adding the mother as a party was feasible, in accordance with Rule 19; what efforts were made to attempt service on the mother; whether the actions properly proceeded in the juvenile court in the mother's absence; and whether the father's appeals are due to be dismissed, either in their entirety or as against the mother. The father filed a letter brief in response to this court's order.

<u>Analysis</u>

We note first that neither the father nor the maternal aunt raised an issue regarding the father's failure to serve the mother in the juvenile court and that neither the father nor the maternal aunt have raised that issue on appeal. Because the mother was never served with process, she was never made a party to the actions. See Harris v. Preskitt, 911 So. 2d 8, 14 (Ala. Civ. App. 2005). Although neither the father nor the maternal aunt has raised the issue on appeal regarding the father's failure to join

6

the mother as a party, we consider on our own motion whether the mother was a necessary and indispensable party such that reversal of the judgments is required. See, e.g., Darby v. Presley, 327 So. 3d 242, 245 (Ala. Civ. App. 2024) (affirming that the failure to join indispensable parties can be raised for the first time on appeal by the appellate court ex mero motu).

Rule 19 provides, in pertinent part:

"(a) Persons to Be Joined If Feasible. A person who is subject to jurisdiction of the court shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

"(b) Determination by Court Whenever Joinder Not Feasible. If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed,

7

the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

In W.L. v. D.B., 267 So. 3d 317, 318 (Ala. Civ. App. 2018), this court considered an appeal filed by W.L., the father of G.A.M., from a judgment entered by the Escambia Juvenile Court denying W.L.'s petition seeking custody of G.A.M. G.A.M. had been the subject of a dependency petition filed by the Escambia County Department of Human Resources; in the dependency action, the Escambia Juvenile Court had entered an order finding that G.A.M. was dependent, awarding G.A.M.'s grandparents pendente lite custody of G.A.M., and providing that G.A.M.'s mother, M.M., could have supervised visitation with G.A.M. at the discretion of G.A.M.'s grandparents. Id. at 319. W.L. filed a petition for custody of G.A.M., which was assigned a separate case number; no attempt was made to serve M.M. with process. Id. Following DNA testing establishing that W.L. was G.A.M.'s father, the Escambia Juvenile Court entered an order awarding W.L. visitation with G.A.M., with the visits to

8

be supervised by G.A.M.'s grandparents.  Id.  Following a final hearing, the Escambia Juvenile Court entered a judgment denying W.L.'s petition for custody, maintaining the custody that had been awarded to the grandparents pendente lite in the dependency action, and maintaining the supervised visitation previously awarded to W.L.  Id.  On appeal, this court raised, ex mero motu, the failure of W.L. to join M.M. as a party. Id. at 319.  This court concluded:

> "In the present case, [M.M.] was a necessary party under Rule 19(a) because her parental rights to [G.A.M.] had not been terminated -- those rights remained intact, subject only to the pendente lite custody of [G.A.M.] awarded [G.A.M.'s] grandparents in the dependency action brought by [the Escambia County Department of Human Resources]. Therefore, [M.M.] should have been joined as a party in [W.L.'s custody] action if it was feasible.  However, she was not joined in that action, and no determination was made regarding whether it was feasible or, if it was not feasible, whether the action should proceed in her absence."

Id. at 321.  Accordingly, we reversed the judgment and remanded the cause for further proceedings.  Id.

In his letter brief to this court, the father attempts to distinguish the present cases from W.L. because, he says, no attempt was made to serve M.M. in W.L., whereas, in the present cases, "the father made multiple documented attempts" to serve the mother; because the

Escambia Juvenile Court failed to conduct a Rule 19 analysis in W.L., whereas, in the present cases, the juvenile court "expressly considered the mother's absence, the failed service attempts, and the lack of impact on her rights before proceeding in her absence"; and because W.L. "arose in conjunction with [an] initial dependency proceeding, whereas th[ese] case[s] involve[] a post-dependency modification." Regarding the latter argument, we cannot determine how the posture of W.L. requires a different analysis from the present cases regarding whether the mother in the present cases is a necessary party. Like in W.L., the mother's parental rights to the children in the present cases have not been terminated and the mother retains certain residual parental rights and responsibilities. See, e.g., Ala. Code 1975, § 12-15-102(23). Like the father, the mother in the present cases retained the right of visitation with the children pursuant to the 2022 judgments. Additionally, in his petition for a modification of custody, the father sought an award of child support against the mother in conjunction with his request for sole legal and physical custody of the children. As the juvenile court appears to have acknowledged in its May 7, 2025, orders, the mother was a necessary party to the underlying proceedings.

10

The father also asserts that, unlike in W.L., the father made multiple documented attempts to serve the mother and that the juvenile court conducted a Rule 19 analysis to determine whether the mother was an indispensable party. In Holland v. City of Alabaster, 566 So. 2d 224, 226 (Ala. 1990), our supreme court stated, in pertinent part:

> "Rule 19, [Ala.] R. Civ. P., provides a two-step process for the trial court to follow in determining whether a party is necessary or indispensable. Ross v. Luton, 456 So. 2d 249, 256 (Ala. 1984), citing Note, Rule 19 in Alabama, 33 Ala. L. Rev. 439, 446 (1982). First, the court must determine whether the absentee is one who should be joined if feasible under subdivision (a). If the court determines that the absentee should be joined but cannot be made a party, the provisions of (b) are used to determine whether an action can proceed in the absence of such a person. Loving v. Wilson, 494 So. 2d 68 (Ala. 1986); Ross v. Luton, 456 So. 2d 249 (Ala. 1984)."

Regarding the feasibility of joining a necessary party, our supreme court stated in Liberty National Life Insurance Co. v. University of Alabama Health Services Foundation, P.C., 881 So. 2d 1013, 1024 (Ala. 2003):

> "In order to make a determination as to the feasibility of joinder under Rule 19, Ala. R. Civ. P., a court must consider whether the absentee party is subject to service of process, whether the absentee party's joinder will deprive the trial court of subject-matter jurisdiction, or whether the absentee party makes a valid objection to the court's venue after joinder. See 3 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 1604

11

(2001).  See also <u>Tick v. Cohen</u>, 787 F.2d 1490, 1493-94 (11th Cir. 1986) ('Limitations on service of process, subject matter jurisdiction, and venue ... may bar joinder in some cases.'); <u>Potts v. Gordon</u>, 34 Colo. App. 128, 134, 525 P.2d 500, 503-04 (1974), citing C. Wright & A. Miller, <u>Federal Practice and Procedure</u> § 1604 ('Joinder is "feasible" under [Rule 19, Colo. R. Civ. P., substantially similar to Rule 19, Ala. R. Civ. P.,] as long as the absentee is subject to service of process; his joinder will not deprive the court of jurisdiction; and he has no valid objection to venue of the court.')."

In that case, our supreme court noted that the record was "devoid of information sufficient to inform [the court] as to the feasibility of joinder" of a certain affected group of necessary parties.  881 So. 2d at 1024.  Thus, the supreme court determined that "the trial court would have to conduct further proceedings to develop that information and make a finding as to the feasibility of joinder, before the issue would be ripe for appellate review."  <u>Id.</u>

In the present cases, the father asserts in his letter brief that he had

"made reasonable and diligent efforts to serve the mother, including attempted service via certified mail on at least two occasions, sending service and copies of subsequent pleadings to the mother's two most recent addresses listed on Alacourt records, and continuing efforts at service up to the date of trial as directed by the trial court."

There is no indication in the record on appeal, however, regarding the efforts the father made to serve the mother or why those efforts failed, including the method or methods of service employed or the reason those efforts were unsuccessful. The father asserted in his petition for a modification that the mother's last known address was in Mulga. The Mulga address for the mother is listed on multiple documents throughout the proceedings.[1] At the October 14, 2025, trial, however, when asked about the mother's location, the father testified that, as far as he knew, the mother was "somewhere in Empire." The father testified further that he had not attempted to communicate "directly" with the mother since March 2022, but, when asked whether he had attempted to communicate with her indirectly through friends or family, he stated "[t]hrough their other sister and a niece." The father proceeded to testify that the mother was aware of the court proceedings and that "it was her belief that the [children] would be better with [the father]." At that point, the juvenile court sustained an objection to the father's testimony; however, it overruled that ruling after the father's counsel asserted that the mother

_____

[1]We note also that, on appeal, the father listed the Mulga address as the mother's address and that a letter addressed to the mother at the Mulga address was returned to this court.

"is a party" and the juvenile court permitted the father to "say what [the mother] said." See Rule 801(d)(2), Ala. R. Evid. (addressing that a statement is not hearsay if it is an admission by a party opponent).

First, we note that, even assuming that the mother had been made aware of the proceedings before the juvenile court, our supreme court has confirmed that actual knowledge is not a substitute for service. Ex parte Sawyer, 984 So. 2d 1100, 1111 (Ala. 2007). The juvenile court stated in its judgments that the mother had not been served "though many attempts were made to secure service and those attempts failed." That does not amount to a determination, however, that service on the mother was not feasible. There is no indication in the record on appeal that service was attempted on the mother in Empire at any time, even after the father's testimony at the trial as to her whereabouts. Additionally, the father testified that the mother had stated that she was not going to attend the trial because "she has warrants for whatever reason and she's terrified of the courthouse for said warrants." That information could support a finding that the mother had avoided service such that service by publication might be available to perfect service on the mother. See Rule 4.3(c), Ala. R. Civ. P. Like in Liberty National, the record on appeal

14

does not contain information from which this court can determine whether the mother was subject to service of process such that service on the mother was feasible. Therefore, we must remand the cases for the juvenile court to conduct further proceedings as necessary and to make a determination on that issue.

Additionally, because the juvenile court allowed the father to testify as to the mother's out-of-court statements based on her purported status as a party, it is clear that the juvenile court had not performed a Rule 19 analysis regarding whether the actions could proceed without her having been made a party at that time. The juvenile court stated in its judgments that it had "elected to go forward on [the] father's petition while giving thought and consideration to the mother's rights and court order from the past." It concluded its judgments by noting that the modification of the father's visitation did not interfere with or disrupt the prior orders regarding the mother's visitation. We cannot conclude, however, as the father asserts in his letter brief to this court, that the juvenile court's having structured its judgments to preserve the mother's rights under the 2022 judgments satisfied the requirements of Rule 19(b). As noted above, there is no indication that the judgment at issue in <u>W.L.</u>

15

modified M.M.'s rights as they existed before that judgment was entered. Rather, this court concluded that M.M., who we concluded was a necessary party to the action, should have been joined as a party if it was feasible and that the judgment was due to be reversed and the case remanded because no determination had been made regarding whether joinder was feasible or, if it was not feasible, whether the action should proceed in her absence. 267 So. 3d at 321.

Rule 19(b) clearly contemplates that the consideration and determination of the factors outlined therein should occur before proceeding with the parties before the court. The importance of that timing is reflected in the present cases regarding both the mother's treatment as a party at the trial and in the petition itself, in which the father sought an award of child support from the mother alongside his request for sole legal and physical custody of the children. There is no indication that the juvenile court considered the potential prejudice to the mother if the father's petition was granted, or in what way that prejudice could be lessened or avoided, or that it considered the potential prejudice to either the father or the maternal aunt by proceeding in the mother's absence. Accordingly, even if we were to conclude that the

16

juvenile court's determination in its judgments that attempts at service on the mother had failed amounted to a determination that service on the mother was not feasible, which we do not, the cases are also due to be remanded for the juvenile court to comply with Rule 19(b) to determine whether the actions should have proceeded in the mother's absence.

<u>Conclusion</u>

For the reasons outlined herein, we reverse the juvenile court's judgments and remand the cases for further proceedings consistent with this opinion. On remand, if the juvenile court determines that service on the mother is not feasible, it should proceed to "determine whether in equity and good conscience the action[s] should proceed" between the father and the maternal aunt in light of each of the factors outlined in Rule 19(b), with particular regard to the residual parental rights and responsibilities retained by the mother to the children.

CL-2025-0973 -- REVERSED AND REMANDED WITH INSTRUCTIONS.

CL-2025-0974 -- REVERSED AND REMANDED WITH INSTRUCTIONS.

CL-2025-0973; CL-2025-0974; and CL-2025-0975

CL-2025-0975 -- REVERSED AND REMANDED WITH INSTRUCTIONS.

Edwards, Hanson, Fridy, and Bowden, JJ., concur.